# REPORTS OF DECISIONS

OF THE

# SUPREME COURT OF APPEALS

## OF WEST VIRGINIA.

CHARLESTON.

CHAPMAN *v.* J. W. BELTZ & SONS CO.

Decided April 14, 1900.

1. BUILDING CONTRACT.—*Performance.*

The J. W. B. & S. Co. makes the following proposition in writing: "Wheeling, W. Va., Dec. 29, 1894. Mess. Franzheim, Giesey & Faris, City—Gentlemen: We propose to build store building for W. H. Chapman & Sons, as per plans and specifications prepared at your office for the sum of six thousand fifty-nine and 00-100 dollars ($6,059.00.) If addition in rear is left off, for the sum of five thousand five hundred and thirty-two and 00-100 dollars ($5,532.00). Respectfully submitted. J. W. Beltz & Sons Co.," which proposition was accepted verbally by C., under the first clause, for six thousand and fifty-nine dollars. The work to be done was remodeling and rebuilding a house, using some of the old walls in the erection of the building. After a large part of the work had been performed, and before completion of the building, on the 9th day of April, 1895, the building, without fault of the J. W. B. & S. Co. or C., collapsed and

fell in ruins.  On the 13th of April C. notified the J. W. B. & S. Co. that he expected to restore the original part of said building to the condition in which it was when the J. W. B. & S. Co. began the improvements to it, and thereby required the J. W. B. & S. Co., when such restoration should have been completed, to make and complete the said improvements in accordance with the terms of said contract.  Two days afterwards, on April 15th, the J. W. B. & S. Co. notified C., in writing, that it would insist that there was no obligation upon it to restore or complete the improvements on C.'s said building.  *Held,* that C. had a right to restore the substructure. and require the J. W. B. & S. Co. to complete its contract.  (p. 12, 13).

2.  CONTRACT.—*Repudiation—Cause of Action.*

The notification in writing of the J. W. B. & S. Co. to C. that it would insist that there was no obligation upon it to restore or complete the improvements on said building was a violation of its contract, which gives C. a cause of action on said contract. (p. 20).

3.  EVIDENCE.—*Illegal.*

It was error to permit evidence to go to the jury, in favor of plaintiff, to prove the cost of removing the debris from the ground after the collapse.  (p. 21).

4.  DAMAGES.—*Illegal—Remitted.*

When the illegal part of the damages ascertained by the verdict of a jury is clearly distinguishable from the rest, and may be ascertained by the court without assuming the functions of the jury and substituting its judgment for theirs, the court may allow plaintiff to enter a *remittitur* for such part, and then refuse a new trial.  (p. 26).

Error to Circuit Court, Ohio County.

Action by William H. Chapman against the J. W. Beltz & Sons Company.  Judgment for plaintiff, and defendant brings error.

*Modified and Affirmed.*

J. J. CONIFF and J. B. SOMMERVILLE, for plaintiff in error.

W. P. HUBBARD and HENRY M. RUSSELL, for defendant in error.

McWHORTER, PRESIDENT:

William H. Chapman filed his declaration in *assumpsit* at August rules, 1895, in the circuit court of Ohio County, against J. W. Beltz & Sons Company, with which declaration plaintiff filed the following bill of particulars:

J. W. Beltz & Sons Company to William H. Chapman, Dr.

1895.

| | | |
|---|---|---|
| March 23. | To amount advanced upon contract........... | $2,000 00 |
| July 1. | To labor in removing wreckage from fallen building ............................... | 245 00 |
| July 1. | To damage from being deprived of use of land for six months .......................... | 600 00 |
| | | $2,845 00 |

Interest will be claimed on each item from its date.

On September 4, 1895, defendant appeared and demurred to the declaration and to each count thereof. Afterwards, on the 20th of November, the demurrer, being argued, was overruled, and the defendant pleaded the general issue, and asked and obtained leave to tender for filing proper special pleas by the 30th of November, on which day defendant filed an account of set-off, and tendered several special pleas in writing, to the filing of each of which plaintiff objected on the ground that it is not sufficient in law, which objections, being argued, were sustained by the court, and said pleas rejected, to which ruling of the court defendant excepted, and tendered its bills of exceptions, numbered one to seven, inclusive, which were signed and made part of the record. And on the 10th day of February, 1896, a jury was impaneled and duly sworn to try the issue, and on March 10th returned a verdict for plaintiff for two thousand three hundred and sixty dollars and sixty-seven cents damages, the aggregate of principal and interest to that date, when defendant moved the court to set aside the verdict of the jury and grant a new trial, and also moved in arrest of judgment, which motions the court took under advisement; and on the 23rd of May, 1896, defendant filed assignments in writing of its grounds in support of said motions, which assignments are substantially the same as those contained in its petition for writ of error, and also filed the separate affidavits of Philip Neuhart and Earl Barr in support thereof; and said motions, being argued, were overruled, and judgment entered on said verdict, to all of which rulings of the court defendant excepted. The following are the affidavits of Neuhart and Barr, referred to as filed, and also the following agreement signed by counsel touching the same matter:

"Earl Barr, after being duly sworn, upon oath says that he was page of the court in which the case of *W. H. Chapman* v.

*J. W. Beltz & Sons Co.* was tried at the last term of the circuit court of Ohio County; that while the jury in that case was in its room, trying to reach a verdict, and the day before it rendered its verdict in the case, one of the jurors in the case, Isaac Simms, came out of the jury room, and was then intoxicated, and staggered in the presence of the affiant and several other persons, and looked like a drunken man."

"Philip Neuhart, being duly sworn, says that he was one of the janitors of the court house in which the case of *W. H. Chapman* v. *J. W. Beltz & Sons Co.* was tried at the last term of the circuit court of Ohio County; that after the jury in that case had gone to its room, and had been out for a day or so, and the day before it returned its verdict into court, he saw one of the jurors, whose name was Isaac Simms, out in the hall, near the jury room, in a state of intoxication. The juror was plainly intoxicated, for he staggered in the presence of the affiant, and his appearance was that of a drunken man. At the time last named the jury was in its room for the purpose of considering its verdict. While the jury was trying to reach a verdict in its room, just across the hall of the court building, in the water-closet that had been used frequently by the jury, affiant found eight empty beer bottles, and a quart bottle that had had whisky in it."

"It is agreed by the parties that the facts relating to the conduct of the juror, Isaac Simms, in addition to those stated in the affidavits of Earl Barr and Philip Neuhart, are as follows: While the jury were considering their verdict the fact that said Simms was intoxicated was brought to the attention of the judge of the court, as well as to the attention of counsel on both sides. With the assent of the counsel on both sides of the case, the jury was adjourned over until the following day, when said Simms appeared apparently sober, and, with the other jurors, was sent to the jury room. He continued sober, so far as could be ascertained, until the jury brought in its verdict as in the record is set forth. At no time prior to the bringing in of the verdict was any objection or motion of any kind, based on the conduct of the said Simms, made by either party to the case. It is further agreed that these facts may be considered by the court on the motion for a new trial made by the defendant, in like manner as though proved by affidavits."

*Bill of Exceptions No. 1:* "Be it remembered that during the

trial of the above-entitled cause the defendant asked the witness J. R. Butts the following question: 'Suppose that, under the circumstances and conditions named to you in the thirtieth question, when the front wall of the Chapman building was completed to a point about halfway between the third and fourth stories, and the girders and other supports of the rear wall, which was not to be of brick, but of glass, had been placed in position, and the party wall had been built to about the top of the fifth story; the first floor had been relaid with new boards, and the second and third floors had been laid, and the timbers and sheeting of the new roof were in position; and while the old roof was still on the building, near the place where the fourth floor was to be, the Hutchinson building should suddenly separate from the Chapman building, and move southward for a short distance, and then the upper portion of the Hutchinson building should come back and sink in, and the Chapman building should also fall, what, in your opinion, would be the cause of the fall of the buildings?' To the asking of which question the plaintiff objected, and the court sustained said objection, and refused to allow said question to be answered, to which action of the court the defendant then and there excepted. The defendant, to prove its set-off in said cause, at the trial thereof made the following offer: 'Defendant offers to prove that the following articles before the time of the collapse of the Chapman building had been got ready and prepared for use in said Chapman building, which were still at defendant's place of business, in pursuance of the contract between the plaintiff and the defendant: 4 circular head box frames and sash; 2 lights, 30x36, to the value of twenty-eight dollars; 4 blank frames, nine-inch wall, and sash; 1 light, 36x70, valued at sixteen dollars; 3 box frames and sash; 4 light, 28x40, thirteen-inch wall, value of eighteen dollars; 3 box frames, 4 light, 28x36, with transoms, twenty-five dollars; 4 box frames and sash, 2 lights, 30x44, with transom, value twenty-six dollars; 1 open front for rear, value twenty-four dollars and seventy-five cents; 4 large frames and sash, 88x96; 4 pivots, valued at forty-eight dollars. The defendant will further offer to prove, as to these items last mentioned, that they were valueless and of no use to the defendant after they had been cut and prepared for the plans of that building, and that since the collapse of said building the defendant has made no use, nor could have made any use, of said items.'

To which offer the plaintiff objected, and the court sustained said objection, to which action of the court the defendant then and there excepted, and asked that this, its bill of exceptions No. 1, might be signed, sealed, and made part of the record, which was accordingly done.

"JOHN A. CAMPBELL.  [Seal.]"

*Bill of Exceptions No. 2.* "Be it remembered that upon the trial of the above-entitled cause, and before the jury retired to consider their verdict, the defendant asked the court to give the following instructions: 'Defendant's instruction No. 10: . The court instructs the jury that if they believed from the evidence that the collapse of the Chapman building occurred by reason of any fault or negligence of W. H. Chapman, or by reason of any fault or negligence of W. H. Chapman and T. T. Hutchinson, then they cannot find for the plaintiff. Defendant's instruction No. 11: The court instructs the jury that if they believe from the evidence that before and at the time of the collapse of the Chapman building the defendant was doing its work on said building according to the plans and specifications prepared by the architects of said Chapman, and further believe that the said collapse was due to any act or fault of the said Chapman or his architects while acting for him within the scope of their employment, then the jury cannot find a verdict for the plaintiff, even though they may believe that the said collapse was due to the insufficiency of the said party wall, and that the defendant knew, or might have known by the use of reasonable care and diligence, of such insufficiency. Defendant's instruction No. 12: The court instructs the jury that if they believe from the evidence that the continued existence of the portions of the Chapman building on which the defendant was doing its work under the contract in evidence was necessary for the completion of said work under said contract, and further believe that before the completion of said work the said portions of said Chapman building on which said work was being done as aforesaid collapsed, and carried with them the work that had already been done by the defendant on said portions, and that said portions were thereby destroyed, then they cannot find for the plaintiff, even though they may believe that said collapse occurred without any fault on the part of the said plaintiff or defendant.' But the Court refused to give said instructions.

"And the plaintiff asked the court to give the following in-

structions: 'Plaintiff's instruction No. 1: In order that the plaintiff should recover, it is not necessary that the jury should ascertain either that the defendant was negligent or that T. T. Hutchinson was negligent. If the fall and destruction of the building was not due to the negligence or default of the plaintiff or his architects, then the plaintiff is entitled to recover, without regard to the negligence of either defendant or Hutchinson. Plaintiff's instruction No. 2: If the jury believe from the evidence that the proposition which has been introduced in evidence was accepted by the plaintiff, and that a contract was thus made in accordance therewith, and if they further believe from the evidence that the building referred to in the contract fell while the defendant was engaged in doing work upon it in the course of the performance of the contract, then the plaintiff is entitled to a verdict, unless the jury further believe from the evidence that the plaintiff or his architects had been negligent in the performance of, or in the failure to perform, some duty which ought to have been done by them. Plaintiff's instruction No. 3: The court instructs the jury that the question of Mr. Hutchinson's negligence is not involved in this case. Plaintiff's instruction No. 4: If the jury believe from the evidence that the proposition which has been introduced in evidence was accepted by the plaintiff, and that a contract was thus made in accordance therewith, and if they further believe from the evidence that the defendant under the said contract began the work therein provided for, and that before it had completed the same the building fell, without any fault or negligence of the plaintiff or his architects, then, although the defendant may not itself have been at fault, the plaintiff is entitled to recover the two thousand dollars paid by him to the defendant on March 23, 1895, with interest thereon, as well as any other damages which, as appears by the evidence, were suffered by the plaintiff by reason of the defendant's breach of its contract. Plaintiff's instruction No. 5: Unless the jury believe from the evidence that the fall and destruction of the building which was the subject of the contract between the parties was due to some act or default or negligence of the plaintiff or his architects, the jury will not consider the set-off claimed by the defendant, and the verdict of the jury should be for the plaintiff. Plaintiff's instruction No. 6: The right of the plaintiff to recover is not prejudiced or affected by the fact that during the progress of the work, and on the certificate of the architects,

he made a partial payment of two thousand dollars; but, on the other hand, if the jury find for the plaintiff, their verdict shall include the said amount of two thousand dollars, with interest, as well as any other damages suffered by the plaintiff by reason of the defendant's breach of its contract. Plaintiff's instruction No. 7: The jury are instructed that under the contract in evidence the defendant was bound to use proper care and diligence in bracing and securing the work against accident. Plaintiff's instruction No. 8. If the jury believe from the evidence that the proposition which has been introduced in evidence was accepted by the plaintiff, and that a contract was thus made in accordance therewith, and if they further believe from the evidence that the defendant began under the said contract the work therein provided for, and that, before it had completed the same, the building fell, without any fault or negligence of the plaintiff or his architects, then the defendant, although it may not have been at fault, is not entitled to recover from the plaintiff any part of the set-off which it claims, and the jury shall disregard such set-off.' To which instructions the defendant objected, but the court overruled said objection, and gave said instructions, to which actions of the court the defendant then and there excepted, and asked that this, its bill of exceptions No. 2, might be signed, sealed, and made part of the record, which was accordingly done.

"The court also gave, at the instance of the defendant, and over the plaintiff's objection, the following instructions: 'Defendant's instruction No. 1: The court instructs the jury that if they believe from the evidence that while the defendant was doing the work which it had contracted to do in remodeling the building of W. H. Chapman, spoken of in evidence, and that before said work was completed the portions of the party wall of the Chapman building, upon which said remodeled building was being erected, collapsed and fell by reason of the insufficiency of said wall to support said improvements, and carried with them the improvements aforesaid, then the plaintiff cannot recover in this case. Defendant's instruction No. 2: The court instructs the jury that if they believe from the evidence that the continued existence of the portion of the Chapman building on which the defendant was doing its work under the contract in evidence, as the substructure on which such improvements were to be remade or remodeled building was to be

erected, was necessary for the completion of said work under
said contract, and further believe that before the completion
of said work the said portions of said Chapman building on
which said work was being done as aforesaid collapsed, and
carried with them the work that had already been done by the
defendant on said portions, and that said portions were thereby
destroyed, and they further believe from the evidence that said
collapse was caused by the insufficiency of said substructure,
then they cannot find for the plaintiff in this case. Defendant's
instruction No. 3: The court instructs the jury that, if they
believe from the evidence that the collapse of the Chapman
building occurred by reason of any fault or negligence of W. H.
Chapman, they cannot find for the plaintiff. Defendant's in-
struction No. 4: The court instructs the jury that if they
believe from the evidence that the collapse of the Chapman
building occurred by reason of any fault or negligence of the
architects of W. Chapman, and that such fault or negligence
occurred while said architects were employed by said Chap-
man, and while they were acting within the scope of their em-
ployment as such architects, the jury cannot find for the plain-
tiff. Defendant's instruction No. 5: The court instructs the
jury that if they believe from the evidence the collapse of the
Chapman building was due to any fault or negligence of the
architects of W. H. Chapman, who prepared the plans and
specifications for the improvements of said building, and super-
intended said work, and that such fault or negligence occurred
while said architects were acting for said Chapman, and within
the scope of their authority as such architects, then the fact that
W. H. Chapman may have selected competent architects, and
relied on their judgment, does not relieve him from liability
in this case. Defendant's instruction No. 6: The court in-
structs the jury that, even if they believe from the evidence that
before W. H. Chapman contracted with the defendant for the
improvements on his building, he consulted his architects about
the party wall spoken of in evidence, to determine whether it
could sustain the said improvements, and further believe that
said architects told said Chapman that said wall would sustain
said improvements, and prepared plans and specifications for
said improvements for said Chapman, yet if the jury believe
from the evidence that said party wall was insufficient to sus-
tain said improvements, and the work done on said wall under

said plans and specifications, and they further believe that by reason of such insufficiency such party wall gave way and caused plaintiff's building to collapse and fall, then the plaintiff is not relieved from liability by reason of the fact that he consulted with and relied on the statements of his architects. Defendant's instruction No. 7: The court instructs the jury that if they believed from the evidence that the collapse of the Chapman building occurred by reason of any fault or negligence of W. H. Chapman or his architects, while acting for him within the scope of their employment, the fact that the said Chapman offered to restore the said building to the condition in which it was at the time the defendant began its work, and requested the defendant to again go on with its work, does not entitle the said Chapman to recover in this case, nor relieve him from liability to pay the defendant for all labor and material furnished by the defendant on said improvements up to the time of said collapse, which have not been paid for by said Chapman. Defendant's instruction No. 8: The court instructs the jury that any knowledge that they may believe that the president of the defendant company or any employe of the defendant company may have had as to any defect of the party wall spoken of in evidence at the time of the Hutchinson improvements cannot be considered by the jury in this case for any purpose whatever. Defendant's instruction No. 9: The court instructs the jury that, if they find for the defendant, they must then determine from the evidence how much, if any, of the defendant's set-off has been proven and remains unpaid, and render a verdict in favor of the defendant for the amount so proven, with interest upon each item proven at the rate of six per cent. per annum from the time such item became due.' To the giving of each of which the plaintiff excepted.

"The plaintiff also moved the court to give the following instructions: 'Plaintiff's instruction No. 9: Upon the uncontroverted facts in this case, the plaintiff is entitled to recover, and the jury are instructed to find for the plaintiff for the amount of the damages which the jury may believe from the evidence the plaintiff suffered by reason of the defendant's breach of contract. Plaintiff's instruction No. 10: Under the accepted proposition which has been introduced in evidence, the plaintiff, W. H. Chapman, did not become a guarantor to the defendant of the sufficiency of the walls or substructure of his

building for the purpose of sustaining the improvements. If, therefore, the jury believe that the falling of the building was caused by the insufficiency of such walls and substructure, and that the plaintiff neither knew of such insufficiency, nor himself did anything to cause such insufficiency, then the jury should find against the said defendant with respect to its set-off, and in favor of the plaintiff for the two thousand dollars paid by the plaintiff to the defendant on March 23, 1895, with interest from the ——— day of April, 1895, the date of the defendant's letter refusing to proceed with the work, together with such other damages as the evidence may show to have been suffered by the plaintiff by reason of the defendant's breach of its contract.' But on the defendant's objection the court refused to give these two instructions, and the plaintiff excepted.

"JOHN A. CAMPBELL.     [Seal.]"

*Bill of Exceptions No. 4:* "Be it remembered that upon the trial of the above-entitled cause the plaintiff introduced certain evidence to support its claim for removing certain debris from plaintiff's ground, and also to support its claim for being deprived of the use and occupation of said ground by the defendant after the collapse of plaintiff's building, all of which evidence appears in defendant's bill of exceptions No. 5. To the introduction of all of which evidence the defendant then and there objected, but the court overruled said objection, and permitted said evidence to go to the jury, to which ruling and action of the court the defendant then and there excepted, which objections and exceptions are set forth in bill of exceptions No. 5, and asked that this, its bill of exceptions No. 4, be signed, sealed, and made a part of the record, which was accordingly done.

"JOHN A. CAMPBELL.     [Seal.]"

Bill of exceptions No. 5 sets out all the evidence given to the jury in the case, to such portions of which as may be necessary reference will be made hereafter.

From the judgment of the court the defendant obtained a writ of error, assigning the following errors: "(1) In overruling the demurrer of the defendant to the declaration in said cause. (2) In the action of the judge who tried said cause in directing and permitting the witness Joseph Seybold to take the position in the Bank of Wheeling while the jury was viewing said bank, which he, said Seybold, claimed to have occupied in

said bank when the Chapman and Hutchinson buildings, referred to in the proceedings in said cause, collapsed. (3) In not permitting the defendant to ask the witness J. R. Butts certain hypothetical questions relating to the cause of the collapse of said Chapman and Hutchinson buildings, which questions appear in defendant's bill of exceptions No. 1. (4) In not permitting the defendant to prove to the jury in said cause the portions of its set-off which related to material prepared by the defendant for plaintiff's building, and the labor bestowed thereon by the defendant, but which material had not been taken to or put into plaintiff's building at the time of the collapse thereof. (5) In refusing to give certain instructions asked for by the defendant, as appears in defendant's bill of exceptions No. 2. (6) In modifying certain instructions asked for by the defendant, and in giving said instructions as modified, as appears in defendant's bill of exceptions No. 2. (7) In giving to the jury certain instructions asked for by the plaintiff in said cause, as appears in defendant's bill of exceptions No. 2. (8) In permitting the plaintiff to prove to the jury, and recover for, the removing of certain debris resulting from the collapse of the said Chapman and Hutchinson buildings. (9) In not setting aside the verdict in said cause and granting the defendant a new trial on account of the errors hereinbefore assigned, and also on account of certain misconduct of the juror Isaac Simms, as shown by the record in said cause. (10) In not setting aside said verdict because it was contrary to the law and the evidence."

The principal question involved in this case, in my opinion, turns upon the demurrer to the declaration. Can either party recover against the other? Can the appellee recover upon his declaration, or was the demurrer properly overruled? The declaration is based upon the following proposition made by defendant in writing, and filed as Exhibit A, with the deposition of Elmer E. Chapman: "J. W. Beltz & Sons' Co. Wheeling, West Virginia, Dec. 29, 1894. Mess. Franzheim, Geisey & Faris, City—Gentlemen: We propose to build store building for W. H. Chapman & Sons, as per plans and specifications prepared at your office, for the sum of six thousand fifty-nine and 00-100 dollars ($6,059.00). If addition in rear is left off, for the sum of five thousand five hundred thirty-two and 00-100 dollars ($5,532.00). Respectfully submitted. J. W. Beltz &

Sons Co." This proposition was accepted by the plaintiff verbally; electing to have the work done under the first clause of the proposition, at the sum of six thousand fifty-nine dollars. The first count sets up this proposition by defendant, and acceptance thereof by plaintiff, whereby the parties entered into a firm and valid contract for the performance and completion of the work on the part of defendant, by furnishing all the materials and doing all the work, and the promise and aggreement by plaintiff to pay for same the said sum of six thousand fifty-nine dollars, and averring the total failure on the part of defendant to perform his part of the contract, or any part thereof, and averring the payment by him to defendant of two thousand dollars on account of his part of the said contract, and averring that, by reason of the failure and default of defendant to furnish the materials and do the work, plaintiff had sustained damages to the amount of three thousand dollars, and two thousand dollars special damages, by the retention by defendant of the said two thousand dollars paid him as aforesaid. It is contended by defendant that this count is bad on demurrer, because it "alleges nonpayment of the damages resulting from the alleged breach of contract; also, that defendant promised to pay those damages, including the special damages. The contract not being one for the payment of money, this is error, and demurrable," —and it cites *Davisson* v. *Ford,* 23 W. Va. 617, in support of its proposition. JUDGE GREENE was there discussing the objection of defendant to the declaration, because the plaintiff should have alleged the nonpayment of the damages claimed. and says (page 626) : "It is true that in Virginia and West Virginia it has been decided that where an action is brought for a debt, whether it be brought in the form of debt or *assumpsit,* the declaration must allege the nonpayment of the sum of money claimed. * * * But nowhere has it been held, or, so far as I know, even suggested, that in an action of *assumpsit* based on a promise, not to pay money, but to perform some act, it was either necessary or proper, in the declaration, to allege the nonpayment of the damages. Such an allegation seems to me to be absurd, for the object of the suit is to recover the amount of these very damages when they shall have been ascertained by a jury." While the allegation of the nonpayment of damages claimed for the nonperformance of an act may be neither necessary nor proper, and even absurd, as characterized

by the learned judge, yet it is certainly harmless, and may well be regarded as surplusage, and does not render the declaration bad on demurrer.

The second count of the declaration sets out the contract, and the payment by plaintiff of two thousand dollars on account of the contract price, and avers that on the 9th of April, 1895, while the defendant was in the performance of the contract, and while a large portion of the work yet remained to be done, and a large part of the materials to be furnished, the building, being then only partly finished, collapsed and fell, and was partially destroyed, and that part of the work and materials which had been done and furnished by defendant thereby became and remained of no value to plaintiff. It is averred that the collapse was not due to any act or default of plaintiff, and that it was not due to any unprecedented or extraordinary action of the elements, such as is usually designated an "act of God." Then follow the averments of defendant's failure to further perform its contract, and the consequent damage to plaintiff. Plaintiff avers that he notified defendant in writing on the 13th of April, 1895, and within a reasonable time after the collapse of the building, that he (plaintiff) expected to restore the original part of his said building to the condition in which it was when the defendant began the improvements to it, and thereby required the said defendant, when such restoraton should have been completed, to make and complete the said improvements in accordance with the terms of thes aid contract, and that two days after said notice, on April 15, 1895, the defendant notified plaintiff in writing that it would insist that there was no obligation upon it to restore or complete the improvements on said building, and that although a reasonable time for the completion of said improvements, and for the performance by defendant of its contract, had long since elapsed before the bringing of this suit, yet it had wholly failed and refused to proceed further with the performance of the contract, and had retained the said two thousand dollars, and refused to restore it to plaintiff. Defendant contends that under the ruling in *Kern* v. *Ziegler,* 13 W. Va. 707, it was not sufficient for plaintiff to aver that he notified defendant in writing that he "expected to restore the original part of said building to the condition in which it was when the said defendant began the improvements to it, and thereby required the said defendant, when such restoration

should have been completed, to make and complete the said improvements in accordance with the terms of the said contract." This would be the correct position, but for the further averment that defendant, within a day or two after receiving such notice from plaintiff, "notified plaintiff in writing that it would insist that there was no obligation upon it to restore or complete the improvements on said plaintiff's building." With this notification in writing from the defendant, asserting its discharge from all liability to further prosecute the work and furnish the materials under the contract, why should the plaintiff be required to go to the trouble and large expense of restoring the original part of the building as he proposed to do, and again make demand of the defendant to proceed to prosecute the fulfillment of his contract, only to be told on such demand that he had been duly notified of the attitude of defendant with respect thereto, and again refuse to proceed with the work under his contract? A renunciation of a contract is a breach thereof. *Holloway* v. *Griffith,* 32 Iowa 409; *Howard* v. *Daly,* 61 N. Y. 362; *Burtis* v. *Thompson,* 42 N. Y. 246. Suppose that, instead of notifying defendant that he proposed to restore the building to the condition it was in when defendant began work on the improvements, plaintiff had at once restored and placed it in said condition; would it not have been the duty of defendant to proceed to complete its contract? I think so, inasmuch as the contract was on the part of defendant to furnish all material and labor to complete the building to the extent agreed upon, for a gross sum. Appellant relies upon *Clark* v. *Franklin,* 7 Leigh 1, to sustain its demurrer to the declaration in this case. In that case "Franklin, who was a carpenter, undertook the carpenter's work of a wooden house for defendant at certain specified prices per piece, the whole to be done in a workmanlike manner, and defendant Clark contracted to furnish the materials as they should be wanted, and alleged that plaintiff entered upon and executed a great part of the work, and then alleged breaches: (1) That defendant did not furnish materials; and (2) that, in consequence of defendant's own negligence, after plaintiff had erected the house and executed a large portion of the work, the house was blown down by tempest, and defendant refused to pay plaintiff for the work that had been done." That declaration was held to be good on demurrer, as it "contained two distinct allegations, showing the hindrance by the defendant:

(1) That he failed to furnish materials, which was a precedent act to be done by the defendant; (2) that, after the house was blown down, the defendant would not permit the plaintiff to proceed with his work." Judge Tucker, delivering the opinion of the court in that case, says on page 9; "That there was an express contract or agreement on the part of Franklin to take the hazard of destruction by fire or tempest is not pretended. Was such an agreement implied? I think not. If the builder had undertaken to furnish the materials and to build the house out and out, for a gross or lumping sum, there might be more reason for the suggestion that this was a contract of hazard. We might suspect that the gross sum agreed for covered, perhaps, the hazard which the builder might be supposed to have taken upon himself, from the form of the contract. But here is a contract by the measurement,—by the piece; a contract for mere compensation, usually allowed for labor and skill bestowed. There is no room to imply that a premium was given for the risk, and therefore there is no room to imply insurance, or agreement to abide the risk." In *Weis* v. *Devlin*, 67 Tex. 507, 3 S. W. 726, where Delvin had undertaken to remodel a part of the house of Wells, furnishing the labor and materials, and before the work was completed the building was destroyed by fire without the fault of either party, the court says at page 510, 67 Tex., and page 728, 3 S. W.: "In the case before us the appellee undertook to furnish material and to perform labor to complete an entire job. The thing to be done, however, consisted in making alterations in an existing thing, which, in the nature of things, was impossible after the thing to be altered was destroyed, unless the owner saw proper to restore the house to the condition in which it was before the alteration began, or at the time of its destruction. This he did not elect to do, and it was not the duty of the plaintiff to do so. Had this been done, it may be that the plaintiff ought not to recover until he completed the work he undertook, and that the maxim, '*Res periit domino,*' would not apply." See, also, *Dermott* v. *Jones*, 2 Wall. 1, 17 L. Ed. 762; *Butterfield* v. *Byron*, 153 Mass. 517, 27 N. E., 667, 12 L. R. A. 571, is also confidently relied upon by appellant in support of its claim. In this case Byron contracted to erect, build, and finish, in a good, substantial, and workmanlike manner, a three and one-half-story frame hotel on plaintiff's lot, according to specifications and plans, and to be completed by a certain day mentioned,

for which he was to be paid eight thousand five hundred dollars, as the work progressed, in the manner provided in the contract; but, by the specifications, plaintiff was to do the grading, excavating, stone work, brickwork, painting, and plumbing. Subsequently the time of completion was extended twenty-one days, and a provision made that the builder should forfeit fifteen dollars for each day default should be made, after the date to which it was extended. About fifteen days before the date of its completion, the builder having complied with his contract as far as he had gone, and having almost finished the building, the building was struck by lightning and burned to the ground, by which event it was rendered impossible for the defendant to complete the building within the required time. It is said in the statement of the case that "the plaintiff never made any demand upon the defendant to rebuild, nor offered to lay the foundation for a new building. The defendant never called upon the plaintiff to lay such foundations, nor offered to rebuild." What would have been the decision in that case if plaintiff had offered to lay the necessary foundations for a new building, and to furnish the materials to do the work it was his duty to finish and do in the progress of the building under the contract, does not appear; and in that case the time of the completion of the hotel would seem to be material, as it was first contracted to be done May 20th, and time afterward extended to June 10th, with a provision for fifteen dollars per day for default after that date. The demurrer was properly overruled.

Second assignment,—that it was error to permit witness Joseph Seybold to take the position in the Bank of Wheeling while the jury was viewing said bank, which he, said Seybold, claimed to have occupied in said bank when the collapse of the building occurred:

This assignment is based on bill of exceptions No. 3, which shows that during the trial, on motion of plaintiff's counsel, in which the defendant's counsel joined, the jury were taken into view the place where the collapse of the buildings occurred, and also some other buildings that some of the witnesses had referred to in their testimony; that among the places visited was the Bank of Wheeling, on the inside of which Joseph Seybold, a witness for plaintiff, who had already been examined and cross-examined in the trial, had testified that he was standing at the time of the collapse. While the jury were in the bank, one of the attorneys of defendant took a position in said bank about twenty feet from

the front and ten or twelve feet north of the south wall, and requested plaintiff's attorneys to say whether that was about the place where said Seybold had testified he stood when he first saw something wrong with the Chapman and Hutchinson buildings. There being no objection, counsel for defendant asked the judge to have each of the jurymen take a position at said point, and look at the said Chapman and Hutchinson buildings through the front window of said bank. At the suggestion of plaintiff's counsel that the position thus assumed was greater than twenty feet from the front of said bank, counsel for defendant moved forward and towards the front about four feet, and from ten to twelve feet from the south wall of said bank, and asked that the jury view the said Chapman and Hutchinson buildings from the said last-mentioned point. After the view had been taken, and the jury were withdrawing from said bank, they were met near the door by said Seybold, who was about entering the bank, having been absent when the jury visited the bank; and, over the objection of counsel for defendant, the judge took the jury back into the bank, and, in the presence of the jury, asked said Seybold to take the position in the bank which he occupied on the morning of the collapse of the buildings, when he first discovered something wrong with the buildings. Seybold took a position in said bank as required by the judge, and then the jury were sked to view the said Chapman and Hutchinson buildings from the position so taken by said Seybold, all of which was objected to by counsel for defendant, but the jury permitted all of said things to be done over said objection. After the jury had returned to the court house, and the trial had been resumed, Seybold was again placed upon the stand by defendant for further cross-examination, and upon redirect examination testified that the position he had taken in the bank at the request of the judge was the place where he was on the morning of the collapse of said buildings, when he first saw the bricks falling from said buildings, to which testimony defendant objected; but the objection was overruled, and the evidence permitted to go to the jury, to all of which actions of the judge and court the defendant excepted. It is contended by appellee that, as this bill of exceptions makes no reference to the bill of exceptions in which the evidence is set forth (bill No. 5), the court cannot look to the latter bill in considering the questions raised on this bill (No. 3). It has been held that "facts stated

in one bill of exceptions cannot be noticed by an appellate court in considering another, except the first bill of exceptions is referred to in the second, etc., and except, also, when a bill of exceptions is taken after all the evidence has been submitted to the jury, and it purports to set out all the evidence, the evidence set out in this bill of exceptions may be looked to in considering the questions raised in another bill of exceptions taken in the progress of the trial." *Hall* v. *Hall,* 12 W. Va. 2; *Klinker* v. *Iron Co.,* 43 W. Va. 219, 27 S. E. 237. While bill of exceptions No. 5, which purports to contain all the evidence in the case, can be looked to in considering the questions arising on said bill No. 3, it does not appear from the latter bill, or otherwise, how the position taken by the witness Seybold at the request of the judge affected the testimony already given by Seybold, whether it tended to strengthen or weaken it, whether the position taken by the witness in the bank was consistent or inconsistent with his testimony. If consistent, it could not hurt defendant; and, if consistent, it would tend to weaken his testimony, and to that extent hurt only the plaintiff's cause. The object of taking the testimony of witnesses is to arrive at the truth, as nearly as possible; and to further this end, and that the jury may have a more intelligent knowledge of the situation, a view is had of the place and surroundings, by which means the jury can, at a glance, have a better idea of many of the important facts in the case than they could get in a long time from the examination and cross-examination of the witnesses in their presence, with their necessarily imperfect, but honest, descriptions of places, distances, etc. After the view the witness Seybold was recalled for cross-examination by the defendant, who had ample opportunity to show to the jury by such cross-examination wherein the position he took in the bank in their presence was inconsistent with the testimony he had before given.

The third assignment is based on the first part of bill of exceptions No. 1,—the refusal of the court to permit the hypothetical question therein contained to be asked and answered by the witness J. R. Butts. The question No. 30, referred to in the bill, as to what the effect, in witness' judgment, certain things done to the wall would be upon the walls, was permitted to be answered by the witness, who said it would weaken the wall to some extent, but could not say to what extent. In this answer witness stated all he knew of the effect it had upon the wall,

and it is claimed that the hypothetical question recited only a portion of the facts which had been introduced in evidence bearing upon the point, and that, from consideration of this partial statement of facts, witness was called upon for his opinion as to the cause of the fall of the buildings. The answer of witness to question 30—that the effect of the work described would be to weaken the wall—was of no benefit to the jury in the case; for, if it was proven that those things were done, the jury would know as well as the witness that the effect would be to weaken the wall. Expert testimony is intended to give to the jury information on given subjects or principles that are not familiar to the jury, and which the witness is able to give because of his special skill and experience or knowledge. A juror knows as well as the most experienced bricklayer that to remove bricks from a wall tends to weaken the wall, and that, if a wall is undermined, it will give way and fall; that if one wall is fastened to another with girders, and the one falls, the tendency will be to pull the other down with it. I do not think this question comes within the province of expert testimony, and it was rightly rejected. *Welch* v. *Insurance Co.,* 23 W. Va. 288.

The fourth assignment refers to the same bill of exceptions, and relates to offsets filed by defendant for materials furnished and labor performed, as well as for materials prepared for the building, but which had not been placed in the building or delivered on the ground. It is clear that if plaintiff has a right of action against defendant for breach of its express contract, in failing to furnish the materials and work and complete the building to the extent that it contracted to do, defendant cannot prove offsets under the express contract, which it does not claim to have performed in full. This whole question is settled in the overruling of the demurrer to the declaration, the plaintiff having elected to restore the building to the condition it was in when defendant commenced the improvements; and the defendant, having repudiated its contract to complete the work under the contract, cannot offset part performance of the violated contract against plaintiff's damages. Appellant cites *Rawson* v. *Clark,* 70 Ill. 656, in support of its position, in which case certain iron was to be manufactured and placed in a building by the appellee, and after the iron was prepared and partly delivered, and appellee ready to put it in place, the building was burned without fault of either party. The court says in its opinion (page 658), "The

reason for their not completing their contract by placing the iron in the building was the default of the defendant in not having a building provided for the purpose." In the case at bar, after the destruction of the building without fault, so far as the pleadings show, of either party, plaintiff proposed in writing, and so notified the defendant, to restore the building as it was when defendant began the improvements, and demanded that defendant should proceed to complete its contract when the building should be so restored, which defendant refused to do; thereby abandoning the express contract under which it had furnished material and work for which the offsets were filed. It appears from bill of exceptions No. 4 that plaintiff was permitted to introduce evidence to support his claim for removing certain debris from plaintiff's ground, and also for the use and occupation of said ground by the defendant after the collapse of the building, to the introduction of all of which evidence the defendant objected and excepted, upon which bill of exceptions assignment No. 8 is based. The contract was, on the part of defendant, to remodel and build a house for plaintiff at a certain price or sum, to be erected with and upon certain walls or a substructure belonging to and furnished by plaintiff. After the work is partly completed, the whole work, including the old and the new, without fault of the defendant or plaintiff, became a ruin. By restoring the substructure to the condition it was in at the time defendant began work on his contract, plaintiff could require defendant to go on and complete his work under the contract; and this he elected to do, and so notified defendant. We will suppose, for illustration, that defendant was, in good faith, ready to go on with his work and complete his contract as soon as the substructure was restored; what was plaintiff's plain duty, but to do all that was necessary to prepare the walls to receive the work at the hands of defendant? It was no part of defendant's duty to assist in the preparatory work, but only to do the work it contracted to do after the substructure was furnished and ready. The court erred in permitting the testimony to go to the jury in relation to the cost of removing debris. As to the item for being deprived of the use of said property, the question asked was, "How long was plaintiff kept out of the use and occupancy of the building and ground thereon, after the time that he should have had the use and occupancy of it after the contract had been completed, and if there had been no accident?" There

was no contract time for completing the work, and defendant would be given a reasonable time in which to complete its contract and the measures of its liability under this item would be only the time plaintiff would be necessarily delayed, if any, in securing another contract, or, in other words, the difference between the time in which defendant could reasonably have completed the work after the restoration of the substructure by plaintiff, and the time it was completed under another contract, in case the plaintiff was reasonably diligent in having it rebuilt. It is evident that nothing was allowed by the jury on this account, as the two thousand dollars paid on the contract, with its interest, and the amount proved for removing the debris, aggregate just the amount of the verdict.

The fifth, sixth, and seventh assignments are all founded on bill of exceptions No. 2, relative to the giving and refusing of instructions, which bill of instructions is hereinbefore set out *in extenso*. Instructions of defendant Nos. 10 and 12 were properly refused: No. 10, because it is so constructed as to probably make the plaintiff liable, in the minds of the jury, for the neglect of a third party,—one who has no connection with the case in any manner whatever. No. 12 raises the same question which is passed upon in the demurrer to the declaration. Instruction No. 11 is fully covered by defendant's instructions Nos. 3 and 4, except as to the words at the end of No. 11, "and that the defendant knew, or might have known by the use of reasonable care and diligence, of such insufficiency," and this part of the instruction is covered by defendant's instruction No. 8. Both the last clause of No. 11 and instruction No. 8 were not proper to be given. Defendant was a builder, and if it, by its president or agent, knew of a defect in the party wall rendering it insufficient to support the building contracted by it to be built to such wall. defendant's duty was to point out to plaintiff such defect and insufficiency; and if it contracted to erect such building, with such knowledge, without so calling attention to it, it should not be permitted to take advantage of it on the failure of the wall. It is contended by appellant that plaintiff's instruction No. 1 is erroneous, because it is inconsistent with defendant's No. 1, which had been given; that the latter ignores the idea of any fault or negligence of either plaintiff or defendant, and made the case turn wholly upon the insufficiency of the walls,—and says: "And yet, right in the face of this instruction, the court

gave to the jury plaintiff's instruction No. 1, which instructed the jury that they must find for the plaintiff if the fall or destruction of the building was not due to the negligence or default of the plaintiff or his architects. The court had already told the jury, in defendant's No. 1, that the question of negligence or default was immaterial." I do not so understand defendant's No. 1. There is clearly implied negligence on the part of the plaintiff, as it throws the whole fault upon the wall furnished by plaintiff which caused the collapse. The two instructions are not inconsistent. The same point only is made on plaintiff's No. 2. Objection to plaintiff's No. 3 is disposed of with defendant's No. 10. Same objection to plaintiff's Nos. 4 and 5 is made as to Nos. 1 and 2. Plaintiff's No. 6 is objected to because it tells the jury to find for plaintiff the two thousand dollars, with interest, "as well as any other damages suffered by plaintiff by reason of defendant's breach of the contract"; claiming that "plaintiff was not entitled to any sort of damages the jury might think he suffered, but was limited to the damages claimed in dis declaration and his bill of particulars. This is a case in which the evidence shows death resulted, and under this instruction the plaintiff might be allowed all the suffering that such an unfortunate affair might entail." This objection is rather farfetched. A jury must have credit for at least a reasonable degree of intelligence, and, while evidence in the way of description of the collapse and its results got before the jury, they were well aware on what matters damages were claimed, and they were not mislead by the instruction. Plaintiff's No. 7 is claimed to be misleading. It is based upon this provision found in the specifications, which are made a part of the contract: "Contractors will be required in all cases to use proper care and diligence in bracing and securing all parts of the work against windstorm, frost, or accident, inasmuch as it may interfere with the stability and perfection of the work; they in all cases to be their own judges as to the amount of diligence and care required." I am unable to see how it is misleading. The instruction only states in a succinct form the provisions of the contract. Plaintiff's No. 8 is said to be open to all the objections made to one, two, four and five, and no others are offered.

Ninth assignment,—that the court erred in not setting aside the verdict and granting a new trial on account of the errors before assigned, and also on account of certain misconduct of

Isaac Simms, one of the jurors, set out in the affidavits of Earl Barr and Philip Neuhart, and the agreed facts in relation thereto, signed by the counsel on both sides: It is only necessary to read the said affidavits and agreed facts hereinbefore shown, to see that under the rulings in *Flesher* v. *Hale,* 22 W. Va. 44, this assignment is not well taken. It appears from the agreed facts that "while the jury were considering their verdict the fact that said Simms was intoxicated was brought to the attention of the judge of the court, as well as to the attention of the counsel on both sides. With the assent of the counsel on both sides of the case, the jury was adjourned over.   *   *   *   At no time prior to the bringing in of the verdict was any objection or notice of any kind, based on the conduct of said Simms, made by either party to the case." See, also, *Webb* v. *Packet Co.,* 43 W. Va. 800, (29 S. E. 519).

As to rejection of special pleas tendered by appellant, no complaint is made, because "all the matters arising under them were permitted to go to the jury," as stated by appellant. For the reasons herein stated, the judgment is reversed, the verdict set aside, and the case remanded for a new trial to be had therein.

### ON REHEARING.

After the opinion in this case was handed down, the appellee asked and obtained a rehearing; claiming especially that this Court erred in holding that it was error in the circuit court to permit evidence to go to the jury in favor of plaintiff to prove the cost of removing the debris from the ground after the collapse of the building. The letters which passed between the parties are referred to as establishing the fact that the debris referred to as being removed was the property of defendant; and plaintiff says, "The case is a simple one of one man depositing his personal property upon a lot of land belonging to another, and refusing, upon request to remove it." This material was lawfully placed on the premises by the builder, and it is conceded that the collapse of the building was without the fault of defendant, as well as of the plaintiffs; and the evidence shows that the debris was composed of the substructure and superstructure, in one confused mass. The plaintiff offered to furnish a new substructure, and the removal of the debris was necessary for them to get it out of the way, to prepare the sub-

structure for the work of defendant. Appellee suggests two methods of correcting "the error committed without disturbing the questions which have been rightfully determined,"—either to remand the case for a new trial, unless the plaintiff should remit the two hundred and forty-five dollars, the cost of removing the debris, as in *Vinal* v. *Core,* 18 W. Va. 1 (Syl., point 23), approved in *Unfried* v. *Railroad Co.,* 34 W. Va. 260, 279, (12 S. E. 512), or if plaintiffs remit the two hundred and forty-five dollars and interest, and consent to a reduction of the judgment to that extent, the judgment shall be affirmed as to the remainder; claiming that in either case the defendant in error, as the party substantially prevailing, would be entitled to the costs in the appellate court. I am unable to find any authority for this proposition, as regards the costs, and none are cited to sustain it. Where a writ of error is granted, and for any cause the plaintiff in error succeeds either in reversing or modifying the judgment to any appreciable extent, he is entitled to his costs. In *Henry* v. *Meighen,* 46 Minn. 548, 49 N.W. 323, 646, it is held, "When the supreme court, on appeal from an order refusing a new trial, modifies the order for judgment of the court below, appellant is the prevailing party, and entitled to costs." Also, in *Sanborn* v. *Webster,* 2 Minn. 323 (Gil. 277), it is held, "The party who succeeds in obtaining a modification of the judgment below is the prevailing party on a writ of error, and is entitled to costs, in all cases, against the adverse party." *Railroad Co.* v. *Plant,* 24 Neb. 127, 38 N. W. 33; *Bank* v. *Slemmons,* 34 Ohio St. 142. And in *Clark* v. *Bullock,* 65 Mo. 535, "Where the plaintiff desired a *remittitur* entered for the amount in excess of that claimed in his petition, and this excess was the only error in the record, the judgment of the lower court, modified by the desired entry, was affirmed, but it was held that plaintiff must pay the costs of the appeal." *Thompson* v. *Purnell,* 10 Iowa 205; *Pearce* v. *Tootle,* 75 Tex. 148, 12 S. W. 536; *Arnold* v. *Williams,* 21 Tex. 413. "Subject to the discretion of the appellate court to apportion costs as justice may demand, it is proper, when a *remittitur* has been entered on appeal, whether entered voluntarily or by direction of the court, to affirm the judgment of the court below at the cost of the party entering the *remittitur.*" 5 Enc. Pl. & Prac. 204, and cases cited. Plaintiffs insist that, as they have been sustained on all the questions except one, the costs of the writ of

error should fall upon the appellant. Especially do they contend that appellant should bear the costs of the immense record in this case, and the printing thereof, as the greater portion of it relates to those questions decided in favor of plaintiffs. There was objection made by plaintiffs to including all the evidence in the bill of exceptions certifying the evidence, and motion that, instead, a certificate of the evidence touching the questions raised by the bills of exceptions be made, under the provision for such a certificate of the evidence contained in section 9, chapter 131, Code; but the objection and motion of plaintiffs were overruled by the court, to which ruling plaintiffs excepted, and all the evidence, relevant and irrelevant, material and immaterial, was included, making a book of one thousand four hundred and seventy-seven pages, over one thousand four hundred pages thereof being the testimony of witnesses, certainly more than one-half of which had no direct bearing upon any of the questions raised in the case for the consideration of this court on the writ of error, and the case could have been much more satisfactorily presented in less than one-half the space. Plaintiffs contend that, in case of reversal on the one point indicated, in making up costs to be paid by appellees they should be charged only with the printing of such part of the record as related to that point. This position is untenable. An appellant has the right to present the record on every point made by him, leaving out all matter not necessary to the consideration of the questions involved, and, if the judgment shall be reversed, the appellant is entitled to his costs. I think this is a case for the exercise of the court's discretion in relation to the cost of the printing of the record, under section 18, chapter 135, Code. The judgment of the circuit court being right, except as to the item of two hundred and forty-five dollars for the removal of the debris, and plaintiff having signified a willingness to remit that amount of the judgment, this court will enter a *remittitur* of the sum of two hundred forty-five dollars, with interest thereon from the 9th day of April, 1895, until the 10th day of March, 1896, the date of the judgment, and the judgment of the circuit court for two thousand three hundred and sixty-dollars and sixty-seven cents, reduced by the said sum of two hundred and forty-five dollars and interest so released, will be affirmed. The appellant, being the party substantially prevailing, is entitled to its costs in this court; but it shall only

recover of the appellees one-half of the cost of printing the record in the case, and the clerk of this court is directed to tax the costs accordingly.

*Modified and Affirmed.*