210 S.E.2d 618 (1974)
Russell JORDAN, an Infant, Who sues by Norman D. Jordan, his father and next friend and Norman D. Jordan, in his own right
v.
Linda L. BERO and Wayne R. Bero.
No. 13179.
Supreme Court of Appeals of West Virginia.
September 17, 1974.
Concurring Opinion December 20, 1974.
*624 Cather, Renner & Cunningham, Charles V. Renner and Diana Evertt, Parkersburg, for appellants.
Dean & Kingery, Don C. Kingery, Point Pleasant, for appellees. *619 *620 *621 *622
*623 HADEN, Justice:
This is an appeal by Linda L. Bero and Wayne R. Bero, defendants in an automobile accident case, who complain of a final order of the Circuit Court of Marshall County which refused to set aside a judgment entered upon a jury verdict in favor of the plaintiffs in the amounts of $20,000 and $6,000 respectively.
The errors asserted on this appeal relate to: (1) The giving and refusal to give instructions; (2) the introduction of assertedly incompetent opinion evidence relating to the accident occurrence; (3) the sufficiency of the evidence introduced and the damage instructions given by the court on the question of permanency of personal injuries allegedly suffered by the infant plaintiff; (4) the allegedly excessive amounts of the respective jury verdicts; and (5) the court's refusal to reverse its judgment and to grant the defendants a new trial.
We accepted this appeal to consider two principal questions raised by the assignments of error. First, whether the opinion testimony from an investigating police official regarding the location of the accident occurrence and the impact points between the two vehicles involved in the collision was admissible evidence although the police official was not an eyewitness to the occurrence.
Second, and most significant, whether the medical evidence in support of the plaintiffs' claims for personal injury and future effects proximately resulting therefrom was adduced with a degree of reasonable certainty so as to support instructions to the jury which made the existence of and recovery for such injuries a question for the jury to decide.
Other instructions were also fairly raised by the defendants as being erroneous and we shall treat these objections preliminary to the resolution of the main issues.
The accident which provided the genesis for this litigation occurred at approximately 5:30 p. m. on the 29th day of May, 1969, on State Route No. 2, in Mason County, West Virginia. An infant plaintiff, Russell Jordan, then ten years of age, who was riding his bicycle in a northerly direction on the highway, suffered personal injuries from the accident. Russell Jordan was injured by reason of a collision which occurred between *625 his bicycle and a 1968 Fiat automobile owned by defendant Linda Bero and driven by her husband Wayne Bero, who was the sole occupant of the automobile. How the collision occurred was a matter in dispute. The Bero automobile overtook the Jordan bicycle when both vehicles were traveling the same lane of traffic and the automobile either struck the bicycle from behind or the Jordan infant drove his bicycle into the path of the overtaking vehicle.
As a proximate result of the accident, the ten-year-old plaintiff was seriously injured, hospitalized and treated for a period of ten days. The infant was admitted into the hospital in a semiconscious or comatose state and remained unconscious for a period of six days. Four days after regaining consciousness Russell Jordan was discharged from the hospital by his physician, who declared that he was at that time "in good shape".
According to his physicians, the cause of the infant plaintiff's prolonged unconsciousness was a severe brain injury characterized as a contusion of the brain. The proof of future effects of this brain injury provide the source for the principal contentions of error on this appeal. At the request of the plaintiff, the court admitted extensive medical evidence and gave certain damage instructions which permitted the jury to determine the existence of permanent injury and to make award in its verdict for the consequences proximately and foreseeably arising from such injury. The defendants' claim of excessive award by the jury also is resolved by our view of the sufficiency of evidence and the validity of the court's instructions on the question of permanent injury.
Initially, we must pass upon certain errors assigned and fairly raised in relation to the other instructions given by the court on the issue of liability and related matters.
Plaintiffs' Instruction No. 6 told the jury that they could disbelieve the testimony of any witness whom they believed testified falsely in the case. This was a "standard" instruction which has been approved in similar form by this Court in both civil and criminal cases. See Cobb v. Dunlevie, 63 W.Va. 398, 408, 60 S.E. 384 (1908) and State v. Harris, 105 W.Va. 165, 169, 141 S.E. 637 (1928). That instruction is objected to here on the basis of incompleteness but this precise objection was assigned for the first time on appeal. Consonant with Rule 51, W.Va.R.C.P., where an instruction is not so deficient as to require invocation of the "plain error" rule, and where objection is made thereto for the first time on appeal, this Court will not consider such objection. Chambers v. Smith, W.Va., 198 S.E.2d 806 (1973); Yeager v. Stevenson, W.Va., 180 S.E.2d 214 (1971); Walker v. Monongahela Power Company, 147 W.Va. 825, 131 S.E.2d 736 (1963).
Plaintiffs' Instruction No. 7, objected to as abstract and as an incorrect statement of the law of West Virginia, told the jury that "the law presumes that a child between the ages of seven and fourteen years is incapable of contributory negligence and in order to overcome such presumption of law, the burden is upon the defendants to prove, by a preponderance of the evidence, such facts and circumstances as established by the capacity of the infant to be guilty of contributory negligence in this case." This instruction correctly states the law of this jurisdiction. There is a rebuttable presumption that a child between the ages of seven and fourteen is not guilty of contributory negligence. The burden is upon the defendant to show that a child of such age has the capacity to be guilty of contributory negligence. Sutton v. Monongahela Power Co., 151 W.Va. 961, 158 S.E.2d 98 (1967); Goff v. Clarksburg Dairy Company, 86 W.Va. 237, 103 S.E. 58 (1920); see also, White v. Kanawha City Co., 127 W.Va. 566, 34 S.E.2d 17 (1945). We agree with the defendants that such instruction, though correct, tends to be vague and abstract as applied to the facts of this case. However, when read in conjunction with similar instructions offered by both *626 plaintiffs and defendants and given by the court, no reversible error appears. See, syllabus point 7, Lawrence v. Nelson, 145 W.Va. 134, 113 S.E.2d 241 (1960). To the contrary, we believe the jury to have been adequately instructed on the question of an infant's relative evidentiary protection from the strictures of the defense of contributory negligence.
Plaintiffs' Instruction No. 8, further defining the duties of an infant of tender years relative to those of an adult when contributory negligence is asserted as a defense, also correctly states the law of this jurisdiction in respect to contributory negligence and an infant of tender years. It provided:
"The Court instructs the jury that the conduct of an infant is not, of necessity, to be judged by the same rules which govern that of an adult; that while it is the general rule in regard to an adult, or grown person, that, to entitle him to recover damages for an injury resulting from the fault or negligence of another, he must have been free from fault, such is not the rule in regard to an infant of tender years. The care and caution required of a child is according to its maturity and capacity wholly, and this is to be determined by the circumstances of the case, and the evidence before the jury; and the law presumes that a child between the ages of seven and fourteen years cannot be guilty of contributory negligence, and in order to establish that a child of such age is capable of contributory negligence, such presumption must be rebutted by evidence and circumstances, establishing his maturity and capacity."
Such instruction in similar form has been approved by this Court in the case of McCallam v. Hope Natural Gas Company, 93 W.Va. 426, 431, 117 S.E. 148, 150 (1923). As it does not suggest that the jury look beyond the evidence of the case, it is not objectionable under the rule of Sydenstricker v. Vannoy, 151 W.Va. 177, 150 S.E.2d 905 (1966). We apprehend nothing in this instruction which would tend to mislead or confuse the jury.
Plaintiffs' Instruction No. 9 told the jury that the plaintiff Russell Jordan, age ten and, therefore, a child of tender years was to be measured in his conduct by "the degree of care which children of the same age, experience, discretion and knowledge would exercise under the same or similar circumstances." This instruction, though somewhat repetitious of previous instructions on the same subject, again stated the law correctly, was not abstract, and was not couched in language which would tend to mislead or confuse the jury.
Plaintiffs' Instruction No. 10 told the jury that a child has as much right to be on a highway as an adult, and that when a child is on the highway, an adult also on the highway has a greater duty than that of ordinary care to avoid danger to the child. The instruction also told the jury that if the defendant in this case saw or could have seen the infant plaintiff on or near the highway, it then became the duty of the defendant to "increase his exertions in order to avoid danger to said child. Failure to do so would amount to negligence on the part of the defendant." Such instruction though, possibly incomplete in and of itself, also correctly states the law of West Virginia, and the giving of the same in conjunction with other instructions correctly stating the proposition, cannot be said to have prejudiced the defendants. "If an instruction given to the jury is not a binding instruction and some element is omitted in the instruction which should have been included, it is not reversible error to give such instruction if other instructions given by the court contain or include such omitted element." Syllabus point 7, Lawrence v. Nelson, supra; syllabus point 5, Lancaster v. Potomac Edison Co. of West Virginia, W.Va., 192 S.E.2d 234 (1972).
Plaintiffs' Instruction No. 11, given over the objection of the defendants, *627 instructed the jury that by statute, Code 1931, 17C-11-2, as amended, a person riding upon a bicycle is granted all of the rights and is subject to all of the duties applicable to the driver of a vehicle. This instruction further told the jury that the duty of the driver of an overtaking vehicle to another such vehicle traveling in the same direction shall be to give an audible signal upon overtaking and shall be to pass to the left of the overtaken vehicle at a safe distance, and that the overtaking vehicle shall not return again to the right side of the roadway until safely clear of the over-taken vehicle. Code 1931, 17C-7-3, as amended. Applying the statutory duties above set forth to the facts of this case, the instruction concluded:
". . . that if you find from a preponderance of the evidence in this case that at the time and place set out in the complaint, the said Russell Jordan was riding a bicycle in a Northerly direction on West Virginia State Route 2, and that at said time and place Defendant, Wayne R. Bero, was driving an automobile in a Northerly direction on said State Route 2 following the Plaintiff, it became and was the duty of Defendant, Wayne R. Bero, to give an audible signal and to pass to the left of Russell Jordan at a safe distance and not again drive to the right side of the roadway until safely clear of Plaintiff and his bicycle.
"Therefore, if you find from a preponderance of the evidence in this case that the Defendant, Wayne R. Bero, failed to observe and comply with these duties at the time and place of the accident which is the subject of this action, he was prima facie negligent in so doing. If you further find that he was negligent in this respect and that such negligence was the proximate cause of said accident, then you may find for the Plaintiffs unless you further find from a preponderance of the evidence that Russell Jordan was guilty of contributory negligence."
We hold that such instruction correctly states the law of this jurisdiction in permissive language; it is relevant to the facts and does not mislead the jury.
Based upon the evidence adduced and the law applicable to this case, we find no error in the giving of Plaintiffs' Instructions Nos. 6 through 11, inclusive.
The Beros also asserted as error the trial court's ruling on the admissibility of opinion testimony of Sheriff Troy Huffman, an investigating officer who testified at trial in response to subpoena from the plaintiffs. Sheriff Huffman arrived at the accident scene within a short time after the occurrence. He surveyed debris on the highway, skid marks, the damaged condition of the defendants' automobile and the infant plaintiff's bicycle, took extensive measurements and summarized from these physical facts that the accident occurred in the center of the right lane of traffic, that skid marks originated from the point of impact, and that the physical evidence further indicated that the front portion of the automobile struck the rear fender and wheel of the bicycle directly from behind.
The defendants asserted that it was reversible error for the court to have permitted the sheriff to give opinion testimony as to the place and cause of the accident, tending to support and corroborate the plaintiffs' theory of their cases, in disregard of eyewitness testimony offered by the defendant and another eyewitness to the accident.
Bero testified that the infant plaintiff turned left into the pathway of his Fiat and that he had struck the boy and the bicycle a glancing or "at angle" blow. The testimony elicited from a disinterested eyewitness to the accident, a Mr. A. M. Gilley, did not contradict the testimony given by Sheriff Huffman nor corroborate that of Wayne Bero. Mr. Gilley was following the Bero vehicle some four to five hundred feet behind it at the time of the impact. He testified that he did not see the boy until the moment of impact when the boy came "katy-cornered" over the Bero car. His *628 testimony is entirely consistent with that of the sheriff that the boy riding on the bicycle was struck from behind by the Bero automobile.
We have carefully reviewed the testimony of the sheriff, including his qualifications and the foundation for his conclusions as substantiated by a careful and detailed recapitulation of the physical facts found at the scene of the accident. We agree with the defendants that the sheriff did give opinion testimony as to the place on the highway where the accident occurred. On the other hand, the sheriff did not testify as to the ultimate cause of the accident. While he testified that the automobile struck the bicycle directly from behind in the center of the right lane of the highway, he did not make the ultimate conclusion that the defendant was negligent or that the infant plaintiff contributed to his own injuries, or that either was the proximate cause of the accident. His testimony related to conclusions drawn merely from the physical facts found at the accident scene. Consequently, we reject the defendants' characterization of the sheriff's opinion testimony as being conclusive of the cause of the accident.
While opinion evidence is not generally admissible on matters of common knowledge, such evidence may be admissible where the jury cannot be fully informed regarding the facts on which it is based. Reall v. Deiriggi, 127 W.Va. 662, 34 S.E.2d 253 (1945). Whether a witness is qualified to state an opinion is a matter which rests within the discretion of the trial court and its ruling will not ordinarily be disturbed unless it clearly appears that its discretion has been abused. Moore, Kelly & Reddish, Inc. v. Shannondale, Inc., 152 W.Va. 549, 165 S.E.2d 113 (1968); Overton v. Fields, 145 W.Va. 797, 117 S.E.2d 598 (1960); Lewis v. Mosorjak, 143 W.Va. 648, 104 S.E.2d 294 (1958); Toppins v. Oshel, 141 W.Va. 152, 89 S.E.2d 359 (1955). Tested by the foregoing general rules as to the admissibility of opinion testimony, we shall not say that the trial court abused its discretion or that it was clearly wrong in its ruling to admit such testimony. To the contrary, we believe the testimony to have been unobjectionable, relevant, and competent.
Without a doubt, the most troublesome problem presented on this appeal involves the proof of permanent injuries and the instructions given and refused by the court in clarification of this issue. Defendants' Instruction No. 19 which was refused by the court would have told the jury that there was not sufficient evidence of permanent injury suffered by the plaintiff resulting from the accident which would permit a lawful recovery of damages therefor. Consequently, even though the jury determined to find for the plaintiffs, it would have been instructed by the court not to award any damages for permanent injuries.
On the other hand, Plaintiffs' Instruction Nos. 14 and 15, given by the court, made the question of the existence and amount of permanent injuries one for the jury's determination. In both instructions the jury was permitted, after resolution of the issue of liability, to allocate a portion of its award of damages to permanent injuries. Neither Plaintiffs' Instruction No. 14 nor Plaintiffs' Instruction No. 15 required that the jury find as a part of its award that plaintiff was entitled to permanent damages. The language used was merely permissive or suggestive to the jury that it could award such damages "if any" they found to be warranted under the circumstances and evidence of the case.
In Plaintiffs' Instruction No. 14, the jury was instructed that Norman Jordan, the infant plaintiff's father, would be entitled to recover from a negligent defendant, specials representing doctor, drug and hospital bills expended to date in the amount of $1,022.53. In addition, and forming the basis for the defendants' objection, the jury was also permitted to give consideration to injuries, permanent in nature, allocable to Norman Jordan, as represented by:

*629 "(1) Future doctor, drug and medical bills to be incurred, if any, on behalf of Russell Jordan;
"(2) Any future labor or wages of Russell Jordan that his father, Norman D. Jordan, would be entitled to in the future, if any. (Emphasis supplied).
"And in considering the above, you may take into consideration the age and physical condition of the Plaintiff, Russell Jordan, at the time of his injuries, but in no event shall your verdict in this case exceed the sum of $12,000.00." (The amount demanded in the ad damnum clause of the complaint).
In Plaintiffs' Instruction No. 15, the jury was instructed that the infant plaintiff, Russell Jordan, could recover from a negligent defendant for the physical and mental pain to date that he had suffered as a result of the accident, and furtheragain forming the basis for the defendants' objection, the jury could consider any of plaintiff's injuries resulting from the accident which were permanent in nature, and make an award in such sum as would compensate him for:
"(1) Future physical and mental pain and suffering, if any.

"(2) Loss of future earnings, if any, which he may sustain in the future.
"(3) Any residuals, if any, that he may sustain in the future. (Emphasis supplied).
"And in considering the above, you (the jury) may take into consideration the age and physical condition of the Plaintiff at the time of his injuries, but in no event shall your verdict in this case exceed the sum of $50,000.00." (The amount demanded in the ad damnum clause of the complaint).
The defendants objected to both instructions on the basis that they, in allowing the jury to consider the amount sued for, $12,000 and $50,000, respectively, amounts not proven in evidence, constituted prejudicial error from that standpoint alone. While we agree with the thrust and implication of the defendants' objection in this regard, that such sums are normally relevant only in limitation of the amount of the jury's award to a plaintiff, we do not find error on this assignment.
Certainly, the better practice would be to withhold any monetary figure from the jury's consideration which might be suggestive of amounts of damage not proven in evidence. However, recognizing the proper function of the jury and, also, that damage awards in personal injury actions are necessarily somewhat indeterminate in character and amount, this Court, while not approving exposition of ad damnum clauses to the jury, does not reverse a case for this impropriety alone. See, Peck v. Bez, 129 W.Va. 247, 259-260, 40 S.E.2d 1 (1946); Nees v. Julian Goldman Stores, Inc., 109 W.Va. 329, 154 S.E. 769 (1930); Looney v. Norfolk & Western Ry. Co., 102 W.Va. 40, 135 S.E. 262, 137 S.E. 756, 48 A.L.R. 806 (1926); Keathley v. C. & O. Ry. Co., 85 W.Va. 173, 102 S.E. 244 (1919). Compare Ferguson v. Ball and Co., 153 W.Va. 882, 887, 173 S.E.2d 83 (1970).
Moving to the substantial and troublesome bases of defendants' objectionsto the court's refusal in giving Defendants' Instruction No. 19, and to the court's granting of Plaintiffs' Instructions Nos. 14 and 15, we must squarely confront the question of permanency of injuries and the proof adduced in support thereof. In a nutshell, defendants assert, and correctly so, that to form a basis of a legal recovery for the future permanent consequences of the wrongful infliction of a personal injury, it must appear with reasonable certainty that such consequences will result from the injury. Contingent or merely possible future injurious effects are too remote and speculative to support a lawful recovery. Wilson v. Fleming, 89 W.Va. 553, 109 S.E. 810 (1921). To meet the contention, the plaintiffs, while recognizing the validity of the foregoing rule in this jurisdiction, seek to avoid the thrust of this objection on the *630 basis that the inclusion of the crucial language, "if any" vitiates the objection. Plaintiffs say that inasmuch as the instructions allowing an award of permanent injuries are couched in merely permissive language rather than in the form of a binding directive to the jury, the giving of the same does not constitute reversible error. See, Sylvia Coal Co. v. Mercury Coal & Coke Co., 151 W.Va. 818, 829, 156 S.E.2d 1 (1967); Nesbitt v. Flaccus, 149 W.Va. 65, 138 S.E.2d 859 (1964); Davis v. Fire Creek Fuel Co., 144 W.Va. 537, 549, 109 S.E.2d 144 (1959); Walker v. Robertson, 141 W.Va. 563, 573, 91 S.E.2d 468 (1956); Wallace v. Prichard, 92 W.Va. 352, 115 S.E. 415 (1922). The drafter of this opinion would be fortunate indeed if the problem were susceptible of such a simple solution. Unfortunately, it is not.
We are confronted once again with the problem of determining how much evidence is necessary to meet the standard of reasonable certainty which will support instructions to the jury that that body properly might give consideration in its award of damages to lasting and permanent effects of an injury suffered at the hands of a negligent defendant. At the outset, we must review the evidence of permanency in this case and then decide whether the rules applicable to the evidence sustain the recovery given the plaintiffs in the court below, or whether these rules necessarily require the reversal of the results of this case and the award of a new trial to the defendants.
The medical evidence in this case tells us that Russell Jordan was rendered unconscious by a blow or blows sustained in his vehicular accident with Wayne Bero. He was admitted into the hospital emergency room in a comatose state. He had suffered a massive wound, some five to six inches in length on his scalp open to the skull, which required some 150 sutures to close. The infant plaintiff's unconsciousness continued unabated for a period of six days. Upon regaining his senses, Jordan was hospitalized for an additional four days and then released into the care of his parents. The only objective and permanent physical manifestation of his injury apparent to the eye was a scar on the scalp which, at the time of trial, had reduced itself to approximately one inch in length. However, without equivocation or contradiction, his attending physician and an evaluating neurosurgeon both testified that Russell Jordan had suffered a permanent injury which was characterized as a contusion of the brain and also as a "severe brain injury". The treating physician defined a contusion of the brain as a wound or scar on the surface of the brain which would never heal; that it was a permanent sequela; and that it resulted in the "death" of brain cells. This was followed by an explanation that the brain does not have the capacity to regenerate itself from injury. In other words, "death", rather than "injury", is the result of trauma or disease affecting this organ. We have carefully reviewed the record in this respect and we find the evidence to be undisputed and uncontradicted that Russell Jordan did suffer a contusion of the brain which rendered him unconscious for a period of six days, and which required extensive medical care and hospitalization.
We hold that plaintiff introduced sufficient proof from expert testimony that the contusion which rendered him unconscious for a period of six days was a severe brain injury which is permanent in nature.
This evidence was not diminished in sufficiency or counteracted by other evidence elicited by cross-examination that the boy was in good condition upon his discharge from the hospital, or that he was asymptomatic at the time of examination, or that there was a "good prognosis" for recovery. If words are to have their common meaning, a permanent injury is one from which there can be no complete recovery. The physicians who testified in this case did not wish to play God in prognosticating the future effects of the plaintiff's permanent injury. Neither will this Court. We must take the facts as they are and recognize that a ten-year-old boy suffered a severe brain injury proximately resulting *631 from the negligent conduct of the defendant. Although this boy had made a reasonably good recovery from that injury at the time of trial, neither his physicians, a jury, the trial court, nor this Court can predict with absolute certainty the future effects which may ensue from this permanent injury. The physicians have, however, diagnosed with reasonable certainty that a brain injury of this type is permanent. As the jury did, we accept that diagnosis.
Consequently, we hold that it was not error for the trial court to refuse to give Defendants' Instruction No. 19, which would have instructed the jury that they could not consider plaintiff's claim for permanent injuries in making an award if they found defendant's acts negligent and proximately causative of plaintiff's injuries.
Numerous cases from this jurisdiction and others have sustained an award or reversed a case to permit an award for permanent injuries on evidence similar in sufficiency. In the very recent case of Keiffer v. Queen, W.Va., 189 S.E.2d 842 (1972), this Court set aside a verdict for a defendant and awarded plaintiffs a new trial on the issue of damage only, where the jury failed to compensate plaintiff for permanent injuries and future pain and suffering on evidence which showed "substantial" injuries and medical evidence which "tended to show that the accident caused arthritic changes in her (plaintiff's) back which in all probability would be permanent and would continue to cause discomfort." Id. at page 843 of the South Eastern Second Report.
See also, Adkins v. Smith, 142 W.Va. 772, 779, 98 S.E.2d 712 (1957), where the plaintiff was held entitled to a permanent injury instruction on evidence that she was found unconscious at the time of the collision and had received injuries which resulted in hospitalization and recuperation for several weeks at home. At the time of the accident she was found to have blood in her spinal column which her attending physician said could cause headaches for a long time thereafter. She testified that she had headaches persisting at the time of trial. The case of Walker v. Robertson, supra, presented a situation where there was no medical evidence to support the plaintiff's claim for permanent injury. There, this Court approved lay testimony to show a reasonable certainty of the permanent effect of the injury upon the plaintiff. Such testimony was held to be competent and sufficient to support an instruction to the jury making the question of permanency one for their consideration. The injury in question was a broken leg, the effects of which were or should have been apparent to the jury and lay witnesses.
In the case of Frampton v. Consolidated Bus Lines, 134 W.Va. 815, 826, 62 S.E.2d 126 (1950), this Court sustained an instruction making the question of permanency of plaintiff's injuries a jury question, and held that plaintiff's testimony, that she had head colds and other effects from the injury persisting at the time of trial resulting from a broken nose proximately caused by defendant's negligence, was sufficient to permit the jury to consider claims for permanent injuries. There the Court also held such evidence to be competent and admissible so long as plaintiff as a layman did not affirmatively express her opinion as to the permanency of her injury.
On a record absolutely devoid of medical testimony offered in support of the permanency of plaintiff's injuries, this Court has also sustained a jury award for permanent injuries. Passing on this question, the Court, in Sexton v. White Transportation Company, 97 W.Va. 568, 125 S.E. 574 (1924), at pages 572 and 573 of the West Virginia Report, 125 S.E. pages 575-576 held:
"The defendant asserts further that the trial court improperly permitted the plaintiff to state in effect that the injuries sustained . . . resulted in the loss of sight of one eye; his evidence being that before the accident he could see slightly out of this eye, which had been weak since early age, but immediately after it was totally blind. It is contended that the loss of eyesight as a *632 result of the injuries sustained could have been proven only by expert testimony. From the nature of the injuries, and the self-evident character of this proof, we think it was properly admitted." (Emphasis supplied).
See also, Wilson v. City of Elkins, 86 W.Va. 379, 383, 103 S.E. 118 (1920). In this case, medical testimony based upon examination of the plaintiff contradicted the plaintiff. Nevertheless, this Court sustained a verdict on instructions permitting the jury to consider permanent injuries, and held in syllabus point 7:
"Testimony of witnesses as to the physical condition of a party to an action, when relevant and material, based upon their observation of his conduct and actions, is admissible."
In a case presenting a most similar fact situation to the matter at hand, this Court in the case of Bailey v. De Boyd, 135 W.Va. 730, 65 S.E.2d 82 (1951), held that it was not error for the court to give an instruction permitting the jury to award permanent injuries upon evidence that the plaintiff suffered a fairly deep laceration next to the bridge of her nose which extended diagonally and upward for approximately four inches, and injury to her back, and other superficial injuries from the negligent act of the defendant. Medical evidence in support of the plaintiff's claim for permanent award was certainly less conclusive than that offered in support of Russell Jordan's claim:
"The testimony of the two physicians was to the effect that plaintiff's recovery was good; that she will suffer no permanent injury; but that the scars on her face will probably be permanent. One of the physicians testified that the symptoms relating to the headaches and nervousness were subjective and that he could find no objective symptoms in connection with her injuries which would cause headaches and nervousness. The other physician testified that he was unable to determine whether the headaches and nervousness claimed by plaintiff have any connection with her injuries." Id. at page 732 of the West Virginia Report, 65 S.E.2d at page 84.
After acknowledging that this jurisdiction is too firmly committed to the "rule of reasonable certainty" to deviate from it now, Judge Lovins for the majority, sustained the instruction on the evidence given and said:
". . . (T)he instruction in the instant case submits to the jury whether the future injury to plaintiff's health and future pain and suffering will necessarily result from the injuries suffered by her. It is shown by evidence that the plaintiff suffered somewhat serious injuries; that the scars on her face will be permanent; that she was suffering from a sore nose at the time of the trial; that she had not performed any of her duties as a housewife since the injury; and that she suffered from headaches and nervousness, although the headaches and nervousness were not accompanied by objective symptoms. The jury had the right to pass on the plaintiff's testimony." Id. at pages 734-735 of the West Virginia Report, 65 S.E.2d at page 85.
See also, "Sufficiency of Evidence, in Personal Injury Action, to Prove Permanence of Injuries and to Warrant Instructions to Jury Thereon", Annot. 18 A.L.R.3d 170 (1968), and numerous cases collated therein in support of this proposition.
Beyond merely suggesting to the jury that it could make an award for permanency, Plaintiffs' Instructions Nos. 14 and 15 elaborated and specified elements of permanent injuries. In its consideration of plaintiff's damages, the jury was specifically referred to future: residuals, pain and suffering, impairment of plaintiff's earning capacity and medical expenses, if any, respectively. Here, as with the objections to the general consideration of permanency, defendants also say that the evidence of these specific matters was not sufficiently presented, to a degree of certainty, so as to *633 support instructions suggesting these items of recovery.
At the outset, we note our belief that pain and suffering and "residuals" are elements so integral to the legal and medical concept of permanency as to be virtually inseparable and indistinguishable. This Court and others have so treated these subjects where the evidence has warranted such approach. Fairness to the objections raised by defendants, however, compels a somewhat more extensive review of the evidence and the law.
The question of the legal sufficiency of evidence tending to prove the future effects of an injury presents a classic dilemma for the litigants, the witnesses, the courts and juries. In some instances lay witnesses, including a party, may relate their observations of the manifestations of injuries. The prognosis of the future effect of permanent injuries, however, must be elicited from qualified experts, evaluated first by the court and then, if found sufficient, considered by the jury upon proper instruction. Further, as the injured plaintiff is limited to but one recovery for all of his injuries, presently ascertainable and foreseeably predictable, proximately resulting from a single tort, the juridical system must respond fairly, adequately and completely in one trial of the issues. In doing so, the court may permit the plaintiff, who attempts to recover for the future effects of his injuries, to infer consequences from a sufficient quantum of evidence, but a court must be scrupulous to prevent pure speculation. See generally, Carrico v. West Virginia C. & P. Ry. Co., 39 W.Va. 86, 102-103, 19 S.E. 571 (1894); 22 Am.Jur.2d Damages § 26 (1965).
In this case, both the treating and evaluating physician predicted in some measure future effects of the Jordan infant's permanent brain injury. Dr. Obregon, the treating physician opined "how soon it (the scar on the brain) will manifest itself . . . nobody can really say for sure. Only time will tell." He testified in a statistical sense that a significant number of people suffering this type of brain injury later suffer from permanent residuals such as personality changes, memory changes, seizures of a simple nature where just one arm shakes or an eye twitch or "be of a generalized nature" or relatively more severe, "they go into generalized convulsions as in epilepsy." The doctor further concluded that without opening the brain there would be no way to determine the amount of scar tissue or knowing exactly how extensive it was, or the stage of maturity of the scar, and said that if he knew those things he might be in a better position to predict the consequences. Otherwise, as to a permanent prognosis, he predicted "[O]nly God knows. Only time will tell."
Considering objections to this type of testimony, the court stated "I'm sure that the jury understand that he (the doctor) does not have a definite opinion because he has nothing to base it on." Nevertheless, with this understanding, the trial court overruled the defendants' objections and admitted the testimony for the jury's consideration.
In responding to questions as to the probability that plaintiff would suffer future pain by reason of the permanent injury, the treating physician was much more definite. He testified that there were two good reasons why the plaintiff would experience pain in the futurethe scalp wound scar and the scar within the skull, resulting from the contusion of the brain. In this context and in the context of having an approximate fifty-one percent chance of probability, he opined that the plaintiff would have headaches in the future due to the injury.
Some ten months after the accident, the plaintiff was referred to a second physician, Dr. Holbrook, who specialized in neurosurgery. Based upon the patient's case history, x-rays previously taken, and upon his own physical examination of the boy, the doctor found him to be asymptomatic at the time of the examination, and stated that the results of the neurological examination *634 disclosed an essentially normal eleven-year-old boy.
On the other hand, this physician also agreed the contusion suffered by the boy could result in loss of memory, concentration and thinking which were common residuals of such severe brain injuries. He said that he could not rule out future complications and could not to a reasonable degree of medical certainty rule out the possibilities of residuals from the permanent brain injury. His ultimate medical conclusions as to future permanent residuals from the permanent injury were virtually synonymous with that of Dr. Obregon, that is, "only time will tell."
Dr. Holbrook also testified that the future prognosis for the boy was good and, at the time of his examination, no further medical treatment was needed. Dr. Obregon's testimony on this point was silent. Obregon merely said that he had seen the boy some five times after his initial discharge from the hospital on an out-patient basis and that he was in "good condition" when released from initial hospitalization.
Although the past medical expenses arising from the accident occurrence were proved to be both necessary and reasonable, no effort was made by the plaintiffs to prove the necessity for future medical expenses or their projected reasonable cost.
We also note that the plaintiffs made no substantial effort to adduce explicit proof which would support a finding that the boy's future earning capacity would be impaired by reason of his brain injury. The only evidence bearing on this aspect of damages was the father's testimony that the infant plaintiff did not perform his daily chores with the same alacrity and concentration as he had demonstrated prior to the accident.
Although no specific medical or other expert testimony was adduced on the point of impairment of earning capacity, or on the point of specific manifestations of permanent residuals emanating from the permanent brain injury, lay testimony was introduced directly and inferentially on these points. The plaintiff himself testified as to a complete memory loss of events happening immediately prior to the accident. This testimony, incidentally, was corroborated by Drs. Obregon and Holbrook, both of whom noted such condition in the Jordan boy. The plaintiff also testified as to headaches and as to lack of feeling at the scar situs on his scalp, both of which were indicative of neuroimpairment.
The boy's father, also a plaintiff in the action, testified to several instances which tended to demonstrate his son's lack of proper memory as to events occurring before the accident, his lack of ability to concentrate since the accident on matters requiring both mental and physical attention, and the general deterioration of the boy's grade point average in school work occurring since the accident.
On these basic facts we are asked whether sufficient evidence of future consequences from the negligent act of the defendant was proven to lawfully permit the jury to make an award for the future effects of the permanent injury.
The permanency or future effect of any injury must be proved with reasonable certainty in order to permit the injured party to recover future damages. Lawrence v. Nelson, supra at pages 148-149 of the West Virginia Report, 113 S.E.2d 241; Shreve v. Paris, 144 W.Va. 819, 111 S.E.2d 169 (1959); Bailey v. De Boyd, supra; French v. Sinkford, 132 W.Va. 66, 54 S.E.2d 38 (1948). Future damages are those sums awarded to an injured party for, among other things: (1) Residuals or those future effects of an injury which have reduced the capability of an individual to function as a whole man; (2) future pain and suffering; (3) loss or impairment of earning capacity; and (4) future medical expenses.
As indicated from the case references to permanency of injuries and sufficiency of proof thereof, supra, many such cases are *635 tested on appeal from the aspect of who was qualified to give testimony as to the reasonable certainty of the future effects of injuries. The general rules of sufficiency on this point have been developed with reference to the apparency of the injury to the beholder.
Where the injury is of such a character as to be obvious, the effects of which are reasonably common knowledge, it is competent to prove either by lay testimony from the injured litigant or others who have viewed his injuries, or by expert testimonymedical, forensic, actuarial, and the like, or from both lay and expert testimony. See for example, Sargent v. Malcomb, 150 W.Va. 393, 146 S.E.2d 561 (1966); Walker v. Robertson, supra; Bailey v. De Boyd, supra; Sexton v. White Transportation Company, supra; Wilson v. City of Elkins, supra.
On the other hand, where the injury is obscure, that is, the effects of which are not readily ascertainable, demonstrable, or subject of common knowledge, mere subjective testimony of the injured party or other lay witnesses does not prove the future effect of the injury to a reasonable certainty. In such situation, medical or other expert opinion testimony is required to establish the future effects of the injury to a reasonable degree of certainty. Rheaume v. Patterson, 289 F.2d 611 (2d Cir. 1961) (Vt.); Gutierrez v. Sutton Vending Service, Inc., 80 Nev. 562, 397 P.2d 3 (1964). Annot., supra, 18 A.L.R.3d 170 (1968).
Brain injury cases exemplify those in which both the injury itself and more often, the future effects of the injury fall into the classification of "obscure" injuries. Physicians, courts and juries all have particular trouble with evaluations of these injuries.
In fairness to the plaintiff, courts and juries tend to give the benefit of the doubt to the injured plaintiff when the effects of the injury are such that they may very well be serious, permanent, and functionally disabling, when their possible manifestations are latent and often hidden from the view of both the qualified surgeon and the layman juror. On the other hand, in fairness to a defendant who may be called upon to pay a very large sum to compensate for an injury which may, in fact, not be present, courts remain circumspect and necessarily severe in the application of the reasonable certainty rule.
Once, however, permanency is established by competent testimony to a degree of reasonable certainty, proof of foreseeable consequences is less difficult. In all of the following cases upon proof of permanency, the jury was permitted to infer the extent and value of the future effects of head and brain injuries and make award therefor to the plaintiff. Bailey v. Bradford, 244 Ark. 8, 423 S.W.2d 565 (1968); Coleman v. Galvin, 66 Cal.App.2d 303, 152 P.2d 39 (1944); Jena v. Third Avenue R. Co., 50 A.D. 424, 64 N.Y.S. 88 (1900); Barron v. Duke, 120 Or. 181, 250 P. 628 (1926); Linderman v. Hershberger, 47 Pa.Super. 308, 314 (1911).
In summary, these cases adopt the salutary view that where, as with brain injuries, the manifestation of a permanent injury may be latent, unpredictable in the time of its appearance and obscure, positive medical evidence that the injury is permanent is usually sufficient to take the question to the jury and to support an award of damages for the future effects of the injury. Burnett v. Caho, 7 Ill.App.3d 266, 285 N.E.2d 619 (1972); White v. St. Louis Public Service Co., 364 Mo. Ill, 259 S.W.2d 795 (1953); St. John's Hospital & School of Nursing, Inc. v. Chapman, 434 P.2d 160 (Okl.1967). This rule has been recognized and applied by this jurisdiction to claims for "residuals" or future effects of proved permanent injuries. See, Shreve v. Faris, supra; Walker v. Robertson, supra; Bragg v. C. I. Whitten Transfer Co., 125 W.Va. 722, 26 S.E.2d 217 (1943); Bailey v. De Boyd, supra. We now reaffirm its validity to the facts at hand.
As an element of future damages, pain and suffering may be an item of recovery *636 where it is reasonably certain that such will result from the injury received. Pygman v. Helton, 148 W.Va. 281, 134 S.E.2d 717 (1964); Peck v. Bez, supra, syllabus point 1; Wilson v. Fleming, supra; Dumphy v. Norfolk & Western Ry. Co., 82 W.Va. 123, 95 S.E. 863, 10 A.L.R. 1152 (1918). The rule was summarized by Judge Haymond in the case of Shreve v. Faris, supra, at page 827 of the West Virginia Report, 111 S.E.2d at page 174:
"As to future pain and suffering in general, such pain and suffering on the part of the injured person, in consequence of the injury, are a proper element of damages which may be allowed if there is reasonable certainty that such pain and suffering will result. 15 Am.Jur., Damages, Section 73."
Again, on this point, where the injury has been shown to be permanent with a reasonable degree of certainty and symptoms as to pain and suffering persist at the time of trial, coupled with the presence of other residuals as documented by lay and expert testimony in the case of an obscure injury, such future pain and suffering may be reasonably inferred by the jury from the very fact or existence of the permanent injury. Shreve v. Faris, supra; Bragg v. C. I. Whitten Transfer Company, supra; Shumaker v. Thomas, 108 W.Va. 204, 151 S.E. 178 (1929). In the Bragg case, the Court noted, appropriate to this point, at page 729 of the West Virginia Report, 26 S.E.2d at page 221:
"The plaintiff's physical condition and his past suffering were proved and are probably sufficient basis for the inference that he will continue to suffer in the future." (Emphasis supplied).
See also the case of Keiffer v. Queen, supra, where the Court said at page 845 of the South Eastern Second Report, that an instruction on pain and suffering which contains the language "and which . . . you believe it is reasonably certain she will suffer, if any, in the future.", should have been given where the court inferred that the accident caused arthritic changes in the plaintiff's back which "in all probability would be permanent and would continue to cause discomfort." Id. at page 843 of the South Eastern Second Report.
In this case we recognize and apply the rule of Collins v. Skaggs, 110 W.Va. 518, 159 S.E. 515 (1931), which held:
"The law furnishes no measure of damages for pain and suffering. In such case, the decision of the jury upon the amount is generally conclusive, unless it is so large or small as to induce the belief that the jury was influenced by passion, partiality, corruption, or prejudice, or misled by some mistaken view of the case." Id. at page 520, 159 S.E. at page 516.
Accord, Richmond v. Campbell, 148 W.Va. 595, 136 S.E.2d 877 (1964).
As we have indicated, this Court favorably views reasonable inferences arising from the evidence in proof of future effects of permanent injury. This approach, however, cannot be extended to unreasonable lengths in support of instant claims for impairment of earning capacity and future medical expenses, which in this trial were proffered on a paucity of evidence in one instance and on no evidence in the other.
Future medical expenses and impairment of earning capacity are proper elements of recovery when a plaintiff has suffered a permanent injury and it has been shown that these particular results are reasonably certain to occur and ensue from the injury. Hall v. Groves, 151 W.Va. 449, 153 S.E.2d 165 (1967); Shreve v. Faris, supra.
Undoubtedly, even an infant plaintiff who has never been gainfully employed may recover damages for impairment of his future earning capacity. During his minority, his parents or guardians may also recover damages for such impairment or loss of earning capacity occurring during the infant plaintiff's minority proximately resulting from the negligent conduct *637 of a defendant. Virginian R. Co. v. Armentrout, 158 F.2d 358 (1946), later appealed, 166 F.2d 400 (4th Cir. W.Va.1948), 4 A.L.R.2d 1064 (1949). Nevertheless, impairment of earning capacity is an item of permanent damages which again must be proved to a reasonable degree of certainty; it cannot be left to sheer speculation or surmise.
In this case, the testimony from plaintiff's father that his son did not perform his chores with the same degree of concentration and diligence as he did previous to the injuries sustained in the accident cannot, standing alone, support an award of impairment of earning capacity. This evidence, while competent, is of such slight inferential value as to be deficient when it is asserted in support of a permissive instruction allowing the jury to make an award for impairment of earning capacity to his father and guardian and to the infant himself. On the other hand, we believe, consistent with our holding in respect to future pain and suffering and residuals, where the permanent injury is proven, reasonable inferences based upon sufficient evidence are all that is necessary to carry this question to the jury for its consideration. Here, however, the evidence was de minimis and was not sufficient to raise a proper inference for the jury's consideration.
On the question of permitting the jury to consider an award for future medical expenses, the plaintiff's reach also exceeds his grasp. As noted previously, the record is absolutely devoid of any attempt to prove that plaintiff or his father will incur future medical expenses from the injury.
Medical expenses are a proper measure of damages, but the legal proof of the same is conditioned with more stringent rules than that which attends claims for other permanent consequences of an injury. The general rule on proof of medical services is that the proper measure of damages is not simply the expenses or liability incurred, or that which may be incurred in the future, but rather the reasonable value of medical services made necessary because of the injury proximately resulting from the defendant's negligence. Dumphy v. Norfolk & Western Ry. Co., supra. A plaintiff may thus recover for the reasonable value of the medical services rendered him because of the injury, provided that he can also show that these services were necessary. Konopka v. Montgomery Ward & Co., 133 W.Va. 775, 58 S.E.2d 128 (1950) (charges fairly necessary and reasonable in amount); Landau v. Farr, 104 W.Va. 445, 140 S.E. 141 (1927).
The same rules apply to the attempts of recovery for future medical services which may be required to treat a permanent injury of the plaintiff. There, too, recovery may be had only for the necessary expense of medical attendance and nursing which is reasonably certain to be incurred in the future. Pygman v. Helton, supra; Shreve v. Faris, supra. There is only scant authority in this country that the need for future medical services and the reasonable value thereof may be inferred from proof of past medical services and their value. Feeney v. Long Island Railway Company, 116 N.Y. 375, 22 N.E. 402 (1889); see generally, 22 Am.Jur.2d Damages § 312 (1965). In West Virginia this question has been resolved definitely to the contrary. This Court held in the case of Hall v. Groves, supra, that proof of future medical expenses was insufficient as a matter of law where there was absence of any evidence to the necessity and cost of such future medical treatment. See also, Pygman v. Helton, supra; Hailes v. Gonzales, 207 Va. 612, 151 S.E.2d 388 (1966); see generally, 5 M.J. Damages § 26 (1973 Cum.Supp.). To support a relevant instruction on the recovery of future medical expenses, the plaintiff must offer proof to a degree of reasonable certainty which will indicate costs within an approximate range, as well as the necessity and reasonableness of such prospective medical charges. Wendell v. G. C. Murphy Company, 137 W.Va. 135, 70 S.E.2d 252 *638 (1952); see generally, 22 Am.Jur.2d Damages §§ 102-104 (1965).
With the foregoing principles firmly in mind, we sustain the award of $20,000 to the infant plaintiff for the injuries suffered by him proximately resulting from the negligent conduct of the defendant Wayne Bero on the highways of this State.
"In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true." Syllabus point 5, Poe v. Pittman, 150 W.Va. 179, 144 S.E.2d 671 (1965); syllabus point 3, Walker v. Monongahela Power Company, 147 W.Va. 825, 131 S.E.2d 736 (1963).
The verdict in favor of the infant plaintiff was attacked as excessive, and as not supported by the evidence. We must reject this attack. There was ample evidence of permanency of an injury which was obscure only in its final and ultimate effects. Lay and medical evidence adduced in support of the plaintiff's case demonstrated that in addition to the permanent injury, plaintiff had suffered deleterious effects from the automobile accident from which a jury may have reasonably inferred he will so suffer in the future and that such suffering and residuals will effect his capacity to function as a whole man in the future. Consequently, we hold that the giving of the permissive Instruction No. 15, offered by the plaintiffs, was a lawful instruction supported by the evidence of this case.
Considering what might occur to this plaintiff and the cost of remedying such occurrences, we cannot say that the verdict rendered in favor of the infant plaintiff, Russell Jordan, was excessive.
"In a civil action to recover damages for personal injuries, the amount which the plaintiff is entitled to recover being indeterminate in character, the verdict of the jury may not be set aside by the trial court or by this Court on the ground that the amount of the verdict is excessive, unless the verdict in that respect is not supported by the evidence or is such that the amount thereof indicates that the jury was influenced by passion, partiality, prejudice or corruption, or entertained a mistaken view of the case." Syllabus, Sargent v. Malcomb, 150 W.Va. 393, 146 S.E.2d 561 (1966).
The only attack as to its excessiveness which can be raised in this case is that the jury may have entertained a mistaken view of the case by reason of erroneous instructions offered by the court. We hold that such instruction as was given by the court in respect to the infant plaintiff's damages was amply supported by competent evidence, and in those minimal respects that it was not supported by the evidence, harmless error only occurred and the defendants were not prejudiced thereby.
The father's case does not stand on the same footing. Norman Jordan recovered a verdict of $6,000 based upon Plaintiffs' Instruction No. 14 given by the court. In addition to the past medical expenses, reasonable in cost and necessarily incurred in the amount of $1,022.53, the jury was permitted to consider an award to this plaintiff for future medical costs and impairment of the infant plaintiff's earning capacity during his minority. As we have previously indicated by our holding in this case and by a review of the evidence, this award is not supported in the evidence of this case to a degree of reasonable certainty. Consequently, an instruction founded primarily on these elements of future effects of a permanent injury cannot stand. Permitting the jury to consider these elements without adequate evidence, the trial court prejudiced the defendant's case. Such prejudice is reversible error.
"In the absence of evidence reasonably tending to establish . . . the probability *639 of future pecuniary loss . . ., an instruction including such elements among those proper to be considered by the jury in determining its verdict, is erroneous." Part syllabus point 6, Miller v. United Fuel Gas Company, 88 W.Va. 82, 106 S.E. 419 (1921); syllabus point 5, Hailes v. Gonzales, supra.

A verdict which is not supported by the evidence or is so large that it indicates that the jury was influenced by passion, partiality, prejudice or entertained a mistaken view of the case, should be set aside. Korzun v. Shahan, 151 W.Va. 243, 151 S.E.2d 287 (1966), syllabus point 7; Sargent v. Malcomb, supra; Poe v. Pittman, 150 W.Va. 179, 144 S.E.2d 671 (1965); Earl T. Browder, Inc. v. County Court of Webster County, 145 W.Va. 696, 116 S.E.2d 867 (1960); Tennessee Gas Transmission Co. v. Fox, 134 W.Va. 106, 58 S.E.2d 584 (1950); Davis v. Pugh, 133 W.Va. 569, 57 S.E.2d 9 (1949); French v. Sinkford, supra; Yuncke v. Welker, 128 W.Va. 299, 36 S.E.2d 410 (1945).
Both parties to this litigation have engaged in the expense and time involved in trial. They should not have to repeat the process if it can be avoided and still be served by an outcome fair to their respective adversary interests. If this case were reversed and remanded for a new trial it would be for the sole reason that Plaintiffs' Instruction No. 14 constituted reversible error and permitted a recovery in favor of Norman Jordan in excess of the medical expenses in the amount of $1,022.53 proved by him as necessary and reasonable for his son's care. We have struck as improper from that instruction a suggestion to the jury that it could award damages for impairment of Russell Jordan's earning capacity and for future medical expenses.
Consequently, to avoid the necessity and cost of a new trial of this case for a single issue, we choose to reverse on this point and remand the case and to direct that the trial court give the plaintiff Norman Jordan a period of thirty days to decide whether he will accept a remittitur in the amount of $4,977.47 resulting in a total verdict payable to him in the amount of $1,022.53, plus interest and costs. "Where the amount in excess in an excessive verdict is definitely ascertainable, a remittitur may be properly employed." Syllabus point 3, Fortner v. Napier, 153 W.Va. 143, 168 S.E.2d 737 (1969); Accord, Bragg v. C. I. Whitten Transfer Company, supra. If he chooses to accept this reduced award without the necessity of a new trial, the case may be so concluded under the procedure recently approved in Earl T. Browder, Inc. v. County Court of Webster County, supra:
"`When the illegal part of the damages ascertained by the verdict of a jury is clearly distinguishable from the rest, and may be ascertained by the court without assuming the functions of the jury and substituting its judgment for theirs, the court may allow plaintiff to enter a remittitur for such part, and then refuse a new trial.' Point 4, Syllabus, Chapman v. Beltz & Sons Co., 48 W.Va. 1, 35 S.E. 1013." Syllabus point 2, id.

Otherwise, the plaintiffs must submit to a new trial. See Carlin, "Remittiturs and Additurs", 49 W.Va. Law Q. 1 (1942).
In conclusion, the principal question presented in this case relating to the sufficiency of evidence necessary to support an instruction permitting the jury to make an award to an injured plaintiff for permanent injuries, was obviously most difficult to resolve. Proof of permanent injuries to a degree denominated as "reasonable certainty" has plagued this Court and all subject to its rulings over the years. We do not regard the solutions enunciated in the foregoing discussion to be conclusive on the subject but we have elaborated upon our reasons for the guidance of litigants, the bar, and the bench of this State, fully cognizant of our own frailties to promulgate rules in that arena of uncertainty which informed medical opinion often commits to the "Gods" and "time". Nevertheless, in respect to these litigants, and for this conflict *640 we have provided the final if not the definitive answer to the particular problem of this lawsuit.
Affirmed in part; reversed in part; and remanded with directions.
NEELY, Justice (concurring):
I concur in the result in this case but I respectfully differ from the majority with regard to the reasoning of syllabus points 7, 9, 12, 13 and 15, all relating to the level of proof necessary to sustain a claim for future damages as a result of personal injury. The majority opinion articulates the traditional rule that future damages must be proved to a reasonable degree of medical certainty, but then recognizes that in an area such as brain injury where it is difficult to predict the ultimate effects of an injury it is almost impossible to comply with the rule.
It appears that the traditional rule requiring future damages to be proved to a reasonable degree of medical certainty was developed at a time when lawyers and judges had substantially less sophistication with probability theory and statistics than they have today. Accordingly the rule has been stated in relatively vague language and has been even more vaguely applied to various factual situations. I believe that the real rule which is in practice applied in the courts and which has been applied by this Court in the case at bar is far different from the enigma of supposed logic which is presented as the formal rule. It appears that the formal rules in this whole area of the law can be brought into conformity with the substance of reported cases through the conceptual framework of an old folk story called "The Lady or the Tiger" which is known to most school children.[1]
According to the legend a suitor in the court of a mythical king sought to win the hand of the king's daughter. As the plot finally developed the young man found himself in an arena surrounded by spectators, including the king, and confronted by two doors, one of which he was required to open. Behind the first door stood a lovely lady (not the king's daughter) whom the king intended him to marry, and behind the second door stood a half-starved tiger hoping to indulge himself in a dinner of young knight that particular evening. No one knows which door the young man opened, but from the story it may be assumed that he had a fifty percent chance of opening the door with the tiger behind it.
Frequently in damage suits involving possible future impairments the plaintiff finds himself in exactly the same situation as the young knight in the arena. In the story the compensation for finding oneself in the middle of the arena and facing a fifty percent chance of being devoured by the tiger was the offsetting fifty percent chance of riding off in the sunset to eternal marital bliss; unfortunately, in the ordinary law suit there is no offsetting advantage except money damages to compensate the plaintiff for the regretable likelihood that he will suffer injuries in the future.
Under the traditional rule that future damages must be demonstrated to a reasonable degree of medical certainty, if the knight in the story were to bring an action against the king for placing him in the arena and for requiring him to open one of the two doors, the knight would not be able to prevail against the king because his probability of being eaten by the tiger would be only fifty percent and thus not demonstrated to the requisite degree of certainty.
Under the rule of law which I would call "The Lady or the Tiger Rule" it is possible to conceptualize the possibility of future medical expenses as a separate injury, in very much the same way that requiring a man to stand in the arena and open one of two doors is in and of itself a separate injury. The fact that a person is confronted *641 with a ten percent, fifteen percent, or twenty percent probability (in the mathematical sense) that he will suffer future injuries should be sufficient to permit him to recover for those future injuries at least in proportion to the probability of such injuries occurring. Therefore, in a hypothetical case, if a man can demonstrate that there is a twenty percent probability that he will have future injuries which would, if they occurred, result in damage to him in the amount of a hundred thousand dollars, he should be able to recover twenty thousand dollars from the defendant, which recovery would represent the injury of incurring a twenty percent probability of suffering one hundred thousand dollars worth of damages.
I believe that conceptually we can consider the possibility of facing future consequences as a separate injury, just as being placed in the arena and being required to open one of the respective doors is a separate injury, without regard to whether the tiger ultimately gets his meal. If in West Virginia the maximum recovery for a wrongful death is a hundred and ten thousand dollars, plus funeral expenses, and the man standing in the arena has a fifty percent chance of releasing the man-eating tiger, then at the moment that he is standing in the arena getting ready to turn the handle on the door he should be entitled to ask the jury for fifty-five thousand dollars plus one-half of his probable funeral expenses (which would be negligible if the tiger does a good job).
In keeping with the traditional rule, the probability, in the mathematical sense, of future injury must be proved to a reasonable degree of medical certainty. Accordingly a doctor should be permitted to testify that on the basis of his experience and his evaluation of statistical information from recorded cases of similar injuries he believes that there is to a reasonable degree of medical certainty a twenty percent probability of suffering a particular disability. Once it is determined that there is a probability of loss, evidence should then be admitted concerning the maximum expected loss should the victim completely lose in the game of chance he is playing with the fates.
Accordingly the jury would be instructed that from all the evidence they should determine what the overall probability is that the plaintiff will suffer future damages, and that from all of the evidence they should determine the amount of monetary damages to which the plaintiff would be entitled if the disabilities which doctors reasonably believe are possible actually come to pass. The jury would then be instructed to multiply the amount of future damages reasonably to be expected times the probability of those damages actually occurring and arrive at a figure which will compensate the plaintiff for the possibility of future injuries. It would appear that in a major damage suit the jury could be aided by expert testimony with regard to probability analysis to make the problem comprehensible to the average layman.
While this analysis may appear to be overly complicated on first reading, it merely recognizes that mathematical probabilities exist which are less than fifty percent and that when the experts testify that such a probability of under fifty percent exists, it is still possible to award appropriate damages without becoming speculative.
NOTES
[1] For a complete rendering of this story see:

The Storyteller's Pack, edited by Frank R. Stockton, Charles Scribner's Sons (New York, 1968). Page 165.