520 S.E.2d 185

**Gina K. ANDREWS, Administratrix of the Estate of Justin Kyle Andrews, Gina K. Andrews, individually, and Jeffrey Andrews, individually, Plaintiff,**

v.

**REYNOLDS MEMORIAL HOSPITAL, INC., a corporation; and R.W. Spore, M.D., Defendant.**

No. 23858.

Supreme Court of Appeals of West Virginia.

Dec. 16, 1998.

For majority opinion of the court, see 201 W.Va. 624, 499 S.E.2d 846 (1997).

MAYNARD, Justice, dissenting:

In the present case, this Court has awarded 1.75 million dollars for wages a baby would have earned had he lived. The baby was born at approximately six months to twenty-eight weeks gestation and lived one day. The total verdict was almost 2.8 million dollars. I dissent in this case because I would affirm the circuit court's final order granting the appellees a new trial.

I believe the circuit court correctly concluded "there was no medical evaluation as to life expectancy or potential physical or mental capacity to produce an economic benefit to [the deceased baby's] dependents." Absent such evidence, the range of possible lost future earnings was not proven with reasonable certainty as is required by Syllabus Point 9 of *Jordan v. Bero,* 158 W.Va. 28, 210 S.E.2d 618 (1974). Also, the plaintiffs failed to produce "the probable quantum of ... potential loss" as mandated by *Panagopoulous v. Martin,* 295 F.Supp. 220, 227 (S.D.W.Va.1969).

The exercise of determining lost future earnings for a deceased baby in a wrongful death action is fraught with perils. It necessarily involves a significant element of speculation. This is aggravated by the fact that deceased babies inflame juries with passion, causing them to run amok in an orgy of throwing large sums of money at the grieving parents. For this reason, circuit courts should be vigilant in scrutinizing large verdicts in such cases to ensure that the amount awarded is supported by the evidence. Here the circuit court did this and correctly, I believe, granted a new trial. By reversing the circuit court, the majority sets a bad precedent. Now, plaintiffs in cases like the instant one can guarantee a large verdict merely by calling someone from the Psychic Friends Network to testify concerning lost future earnings. Further, every deceased baby in a wrongful death action will now be worth at least $1,750,000.

I recognize, however, that by reinstating a jury verdict totaling $2,762,017, this Court is merely being true to form. This is just another in a long line of cases in which this Court has either refused to hear a case where a verdict of at least a million dollars was awarded below, or has issued an opinion upholding such a verdict.

For example, in the recent case of *Bridgeport Home Builders v. Teri A. Bartnicki,* a 1.2 million dollar verdict was awarded against an insurance company for *inconvenience and aggravation.* Despite the absurd verdict, this Court refused to hear the insurance company's petition for appeal. Because 1.2 million dollars' worth of inconvenience and aggravation is hard to imagine, I believe it is obvious this was a punitive damages award in clear violation of *Hayseeds, Inc. v. State Farm Fire & Cas.,* 177 W.Va. 323, 352 S.E.2d 73 (1986). By refusing to consider the appeal, this Court allowed an unwarranted verdict to stand.

Another recent case is *Vandevender v. Sheetz, Inc.,* 200 W.Va. 591, 490 S.E.2d 678 (1997) in which this Court, in a published opinion, upheld a $2,232,740 punitive damages award. I noted in my dissent there that the plaintiff was essentially out of nothing more than four weeks of work, and she suffered minor mistreatment by her employer. In light of this, I argued that such an award was plainly unfair and excessive.

Perhaps a few of the huge verdicts upheld by this Court were warranted. It is my belief, however, that in *many* cases, including the instant one, *Bridgeport,* and *Vandeven-*

*der,* such verdicts are excessive in light of the facts of these cases. Accordingly, I dissent.